352 So.2d 582 (1977)
Merline H. HUNT, As Personal Representative of the Estate of Fred T. Hunt, Deceased, and On Her Own Behalf, and On Behalf of David A. Hunt, Steve R. Hunt, and William A. Hunt, Appellant,
v.
PALM SPRINGS GENERAL HOSPITAL, INC., a Florida Corporation, et al., Appellees.
No. 76-1846.
District Court of Appeal of Florida, Third District.
December 6, 1977.
*583 Magill, Sevier & Reid and Victor H. Womack, Miami, for appellants.
Bradford, Williams, McKay, Kimbrell, Hamann & Jennings and A.H. Toothman and Thomas E. Scott, Jr., Miami, for appellees.
Before PEARSON, NATHAN and KEHOE, JJ.
NATHAN, Judge.
This is an appeal from a directed verdict for defendants in an action alleging negligence on the part of Palm Springs General Hospital toward an emergency patient who had not been officially admitted. Although other assertions of error are made by appellants, we deal first with the primary issue of whether or not a directed verdict was properly rendered. The decision would be supportable only if there were a total absence of evidence upon which jury could find the defendant negligent, or if, as a matter of law, the defendant owed no duty to this patient. Because the facts of this case do not meet unequivocally the rigid requirements of this standard, we are compelled to reverse.
Appellants, plaintiffs below, are the wife and children of Fred T. Hunt who died in another hospital one day after having been denied admittance to Palm Springs. They allege his death was at least partially the result of Palm Springs' refusal to admit or properly treat decedent on the day before his death.
Hunt had been receiving medication for many years for prior injuries, and apparently had become addicted to drugs. He had been without medication for several days prior to the morning of September 25, 1972, when he experienced convulsions at home. He was rushed to the emergency room of Palm Springs, arriving there at approximately 1:20 A.M. He was examined by an unlicensed "resident physician" who called Dr. Pierleoni, a private physician who had attended Hunt previously. Dr. Pierleoni prescribed medication over the telephone, after which Hunt, his condition apparently improved, was sent home at about 2:45 A.M., without having been admitted.
Later that morning he again became ill and was returned to Palm Springs' emergency room between 10:45 and 11:00 A.M. Shortly thereafter, Dr. Pierleoni saw him in a room in the emergency area, asked whether Hunt could be admitted, and was told that he could not be. Hunt owed Palm Springs debts from previous visits. Because of this, the hospital would not admit him unless it was determined by his attending physician that his condition was critical. Dr. Pierleoni did not deem Hunt to be critically ill at that time.
*584 Although he had been placed in a room for a short while on his second arrival at Palm Springs, Hunt was soon moved into the hall. Much of the evidence of what occurred during the several hours between the time he was moved into the hall and the time he was transferred to Palmetto General Hospital, about 3:30 or 4:00 P.M., is conflicting. But it is agreed that Hunt was trembling, that his blood pressure and pulse rate were elevated, and that his temperature was not taken. Hunt's son testified that he had to care for his father unaided by hospital personnel, and that no one else ever checked his father during the time he lay in the hallway. A nurse on duty in the emergency area testified that she must have checked Hunt every fifteen to thirty minutes because this was her standard procedure.
Hunt lived approximately twenty-six hours after he was transferred to Palmetto General. He died there on September 26, of brain damage allegedly the result of prolonged seizures.
Both sides presented expert testimony on the issue of causation. Plaintiff's expert witness stated that Hunt's death could have been avoided, that Palm Springs' treatment of Hunt fell below acceptable standards of care, and that these deficiencies were causally related to his demise. Defendant's expert witness contradicted this testimony. After both sides had concluded their cases, the court granted defendant's motion for a directed verdict, stating that defendant's expert witness had made it clear that nothing defendant did was a cause of death.
Appellee argues that it was not negligent, that even if it were, there was no causal relationship between any alleged negligence on its part and Hunt's death, and that even if there were evidence from which a jury might find such a causal relationship, the directed verdict must be upheld because the hospital had no duty to Hunt since he had never been admitted and the responsibility for his care rested with his private physician.
The testimony of the expert witnesses conflicted. By directing the verdict for defendant, the trial court, in effect, weighed the testimony of each and decided one was more credible than the other. It is neither our prerogative nor the trial court's to do this. Dayton Tire & Rubber Co. v. Davis, 348 So.2d 575 (Fla. 1st DCA 1977). This was not a situation in which no evidence as to either negligence or causation was presented. Expert opinion may support a jury verdict as long as it is grounded in fact, even though it involves a conclusion about causation. Cromarty v. Ford Motor Company, 341 So.2d 507 (Fla. 1976). Proximate cause is a matter for the jury to decide as long as the facts presented are susceptible of more than one inference, and a case should not be withdrawn from a jury's consideration unless, as a matter of law, no proper view of the evidence could sustain the position of the non-movant. Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla. 3d DCA 1974); Bourgeois v. Dade County, 99 So.2d 575 (Fla. 1957).
This brings us to the final reason appellee gives for supporting the directed verdict. If Palm Springs owed no duty to the decedent, its negligence would be immaterial to this cause. This court's decision in Parmerter v. Osteopathic General Hospital, 196 So.2d 505 (Fla. 3d DCA 1967) is on point and persuasive. In that case, summary judgment in favor of a hospital was reversed. The hospital had contended that because the plaintiff was under the care of a private physician who was neither its employee or its agent, it had no obligation to perform any of the allegedly negligent acts its unlicensed intern had committed. This court stated: "While ... there are times when an employee of a hospital may be under the direction and control of a treating physician, the question of when his responsibility begins and the hospital's ends is usually a question for the jury." Id. at 507.
Similarly, in Reeves v. North Broward Hospital District, 191 So.2d 307 (Fla. 4th DCA 1966), the court, reversing a directed verdict for defendant, held that when an expert testified that there were sufficient symptoms evident to alert a medical practitioner *585 that a serious problem existed, it was error to take from the jury its right to determine whether the hospital employees had failed to exercise such reasonable care as the deceased's condition had required.
We hold that the questions of whether Palm Springs General Hospital owed Hunt a duty of care despite his nonadmitted status while he lay in its emergency room area, and whether any breach of such duty occurred which was a causative factor in Hunt's demise are for the jury to determine.
Appellant also asserts error in the trial court's ruling that certain testimony was inadmissible. Appellant's attorney had asked his expert witness a hypothetical question as to whether or not it was a breach of the duty of care for an emergency room "physician" not to perform further tests and administer other medications. Appellee's attorney objected to the question, contending that there was a distinction between a "physician," who must be licensed, and a "resident," who need not be licensed, and that the distinction was relevant to the issue of responsibility for the decedent's care. The trial court erred in sustaining the objection because the question of where to draw the line between the attending physician's responsibility and that of the hospital is one for the jury to decide.
Appellant's remaining point on appeal is deemed without merit.
Reversed and remanded for a new trial.
PEARSON, J., dissents.