462 So.2d 844 (1985)
F.T. LANDRY, Appellant,
v.
Michael HORNSTEIN and Curtiss Pharmacy, Inc., a Florida Corporation, Appellees.
No. 84-984.
District Court of Appeal of Florida, Third District.
January 22, 1985.
Rehearing Denied February 12, 1985.
*846 Michael Lechtman and Burton B. Loebl, North Miami Beach, for appellant.
Edward C. Vining, Jr., Miami, for appellees.
Before HENDRY, BASKIN and JORGENSON, JJ.
BASKIN, Judge.
This is an appeal from a judgment entered upon a jury verdict awarding Landry damages for unpaid rent and awarding Hornstein compensatory damages and punitive damages on his counterclaim for interference with an advantageous business relationship and wrongful exclusion from his rented premises. Appellee cross-appeals. We affirm.[*]
Hornstein, a pharmacist, rented premises for his drugstore from Landry. When Hornstein's pharmaceutical license was suspended, Hornstein, with Landry's permission, entered into negotiations with prospective purchaser Moreno to sell the business and to assign the lease. Discussions between the parties ceased, and Moreno subsequently rented the drugstore from Landry. When Hornstein sold most of his business stock, halted day to day operations, and failed to pay rent on time, Landry instituted an action for unpaid rent, entered the store, and changed the locks. Hornstein had often been late with rent payments; at the time Landry commenced his action, however, Hornstein had failed to pay only one month's rent. Hornstein filed a counterclaim alleging interference with a business relationship and wrongful exclusion from his rented premises. The jury awarded Landry $1,824 for unpaid rent and Hornstein $5,000 compensatory damages as well as $10,000 punitive damages. The court entered final judgment in accordance with the verdict.
In his appeal, Landry asserts that Hornstein failed to prove the elements necessary to establish intentional interference with an advantageous business relationship and failed to establish a wrongful exclusion. In addition, Landry challenges the award of punitive damages and claims entitlement to additional rent. Hornstein, on the other hand, contends that his award was insufficient and that Landry lacked standing to bring the action for unpaid rent.
In order to establish the tort of interference with a business relationship, it is necessary to prove (1) the existence of a business relationship under which the claimant has legal rights; (2) intentional and unjustified interference with that relationship by defendant; and (3) damage to the claimant as a result of the breach of a business relationship. Ethyl Corp. v. Balter, 386 So.2d 1220, 1223 (Fla. 3d DCA 1980), review denied, 392 So.2d 1371 (Fla.), cert. denied, 452 U.S. 955, 101 S.Ct. 3099, 69 L.Ed.2d 965 (1981); International Funding Corp. v. Krasner, 360 So.2d 1156, 1157 (Fla. 3d DCA 1978).
The thwarted business relationship need not be evidenced by an enforceable contract. An action for intentional interference is appropriate even though it is predicated on an unenforceable agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered. United Yacht Brokers, Inc. v. Gillespie, 377 So.2d 668 (Fla. 1979); Scussel v. Balter, 386 So.2d 1227 (Fla. 3d DCA 1980), review denied, 392 So.2d 1371 (Fla. 1981). A mere offer to sell, however, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1370 (Fla. 1979).
The evidence in the case before us was sufficient to sustain a jury finding that the negotiations had progressed beyond the *847 stage of a mere offer, to an understanding between Hornstein and Moreno for the sale of the business and assignment of the lease, transactions which would have been consummated had Landry not interfered. Evidence disclosed that Landry or his attorney had undertaken their own negotiations with Moreno regarding the rental of the drugstore premises while Moreno and Hornstein were still involved in negotiations. That evidence demonstrated an intentional and unjustified interference.
Hornstein testified, without objection:
What had happened was I was seriously negotiating with the man Siegfred Moreno, and he and we had several conversations and he kept telling me that he spoke with Landry and he was very frustrated by this also that it was  the thing wouldn't be consummated.
We had sort of been to contract and all of that. He asked me to call his attorney because he couldn't calm him anymore and he was ashamed and I pretty much wanted to get out of the store at that time and I had called his attorney, a man by the name of Mr. Dias.
And Mr. Dias said the problem is I really don't want my client to buy it from you because I have spoken with your landlord and your landlord is going to get rid of you as a tenant, and there's no need for him to buy it from you. And that was the end of that.
Hornstein's testimony justified a conclusion that negotiations between Hornstein and Moreno ceased only because Landry told Moreno or his attorney that he was "going to get rid of" Hornstein as a tenant and would rent the premises directly to Moreno.
Reconciliation of conflicting testimony that negotiations ceased for other reasons rested upon a credibility determination within the province of the factfinder. Povic v. Melvin, 66 So.2d 494 (Fla. 1953); S. Kornreich & Sons, Inc. v. Titan Agencies, Inc., 423 So.2d 940 (Fla. 3d DCA 1982); Hunt v. Palm Springs General Hospital, Inc., 352 So.2d 582 (Fla. 3d DCA 1977). Where substantial evidence supports a jury determination, an appellate court lacks authority to interfere. Estate of Cohen v. Holland, 370 So.2d 40 (Fla. 3d DCA 1979). An appellate court should not reevaluate evidence and substitute its judgment for that of the jury. Helman v. Seaboard Coast Line R.R. Co., 349 So.2d 1187 (Fla. 1977). We therefore approve the jury determination that Landry unjustifiably interfered with Hornstein's business relationship.
As to the next element, damage resulting from the interference with a business relationship, we find ample evidence. See Born v. Goldstein, 450 So.2d 262 (Fla. 5th DCA 1984); E.T. Legg & Associates, Ltd. v. Shamrock Auto Rentals, Inc., 386 So.2d 1273 (Fla. 3d DCA 1980), review denied, 392 So.2d 1379 (Fla. 1981). Hornstein's damage included the loss of a purchaser and the proceeds of a negotiated sale in the vicinity of $35,000.
Landry's next point is that Hornstein failed to prove that he was wrongfully excluded from the premises and that reversal is required on that basis. We disagree. Under the "two issue" rule, where two or more determinative issues are resolved by a general verdict, affirmance is appropriate when either ground is sustained. Whitman v. Castlewood International Corp., 383 So.2d 618 (Fla. 1980); Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla. 1978); Middelveen v. Sibson Realty, Inc., 417 So.2d 275 (Fla. 5th DCA), review denied, 424 So.2d 762 (Fla. 1982). The jury returned a general verdict for Hornstein on evidence of interference with a business relationship and wrongful exclusion. Our affirmance of the judgment on the issue of interference with a business relationship renders consideration of the wrongful exclusion claim unnecessary.
Insofar as Landry's challenge to the award of punitive damages to Hornstein is concerned, we find no error. "A legal basis for punitive damages exists where torts are committed in an outrageous manner and with fraud, malice, wantonness or oppression." *848 Wackenhut Corp. v. Canty, 359 So.2d 430, 435-36 (Fla. 1978); Aero International Corp. v. Florida National Bank of Miami, 437 So.2d 156, 158 (Fla. 3d DCA 1983), review denied, 449 So.2d 264 (Fla. 1984). This court has upheld jury awards of punitive damages in actions for interference with an advantageous business relationship under appropriate circumstances. Puga v. Suave Shoe Corp., 427 So.2d 288 (Fla. 3d DCA 1983); Scussel; Susman v. Schuyler, 328 So.2d 30 (Fla. 3d DCA 1976). The evidence established that Landry had nothing to gain by interfering with the negotiations between Hornstein and Moreno. Thus, there was support for a jury finding that Landry's interference was malicious and that punitive damages were appropriate. By excluding Hornstein from the premises, Landry foreclosed the possibility of Hornstein selling the business to another purchaser and prevented Hornstein from reopening the store on reinstatement of his license for the purpose of resuming his business.
We find no merit in Landry's remaining point. Landry has failed to demonstrate a basis for increasing the amount of the award on his claim for unpaid rent.
Turning next to the points raised by Hornstein on his cross-appeal, we reject his contention that Landry lacks standing to sue for unpaid rent. Landry executed the lease in his own name, personally collected rent money, and was directly injured by Hornstein's failure to pay rent, acts which afford him standing. Thus, the trial court was correct in offsetting Landry's award for unpaid rent against the amounts recovered by Hornstein on his claims. See Rebozo v. Royal Indemnity Co., 369 So.2d 644 (Fla. 3d DCA), cert. denied, 379 So.2d 209 (Fla. 1979).
As to Hornstein's last point, the record provides no support for his contention that the jury award on his counterclaim was insufficient.
For these reasons, we affirm the judgment.
JORGENSON, Judge, dissenting.
I respectfully dissent. The majority's reliance upon the "two-issue" rule is misplaced. The jury was instructed only upon the issue of wrongful eviction. The intentional interference with a business relationship claim was not submitted to the jury. Because it is clear from a reading of the record that the evidence could not support a jury finding that Landry wrongfully evicted Hornstein, I would reverse.
The uncontroverted evidence is that Landry changed the locks on the store after Hornstein closed down his business and that a key to the new lock was made available to Hornstein.[1] These facts belie any claim that Hornstein was evicted. Moreover, even if Landry's act of changing the locks on the store constituted an eviction, the eviction was not wrongful. The lease entered into between Landry and Hornstein provided that Landry could retake possession of the premises upon Hornstein's failure to pay the rent promptly.[2]
Assuming the issue of intentional interference with a business relationship was properly submitted to the jury, the evidence does not support a jury finding that *849 Landry intentionally interfered with the negotiations between Moreno and Hornstein. Hornstein's testimony, quoted in relevant part by the majority, can support, at the most, that (1) Moreno's attorney had conversations with Landry at the time Hornstein was negotiating with Moreno, during which Landry made the statement that he intended to "get rid of" Hornstein; (2) as a result of Landry's statement, Moreno's attorney advised Moreno that he need not buy Hornstein's business, and (3) Moreno ceased negotiations based on his attorney's advice. There is no evidence that the conversations between Landry and Moreno's attorney consisted of negotiations for the rental of the drugstore by Moreno from Landry. The only evidence regarding the nature of these conversations is Moreno's testimony that Landry and his attorney discussed the possibility of Landry's granting an extension on the lease between Landry and Hornstein. Moreno testified that his negotiations with Landry did not begin until July, 1982. (Negotiations between Moreno and Hornstein had ceased in October, 1981.) Moreno's testimony is bolstered by the fact that he did not begin occupying the store until August, 1982. Moreover, there is no evidence that Landry made the alleged statement that he was going to "get rid of" Hornstein with the intent to interfere with the negotiations between Moreno and Hornstein.[3]
Because the evidence does not support a recovery of compensatory damages, it cannot support the award of punitive damages.
NOTES
[*] We have jurisdiction. Landry's claim was filed in county court; Hornstein's claim was filed in circuit court, and the two cases were consolidated for trial before an acting circuit judge. Hornstein's claim was treated as a compulsory counterclaim to Landry's action.
[1] Landry testified that he had stopped by the store, found it closed down, smelled an obnoxious odor emanating from it, saw through the store window thousands of dead cockroaches littering the floor, and, since he did not have a key to the store, broke the lock on the door to gain entrance. Once inside, he found the source of the stench to be rotting food that apparently had been left behind when the store was closed. Landry then replaced the broken lock with a new lock.
[2] Landry did not waive this provision. The evidence established that Landry had brought earlier suits to collect payments of rent from Hornstein.

The lease provided that Landry could retake possession of the premises upon Hornstein's failure to comply with its terms. One term provided that Hornstein would "run [his] business as a clean and orderly establishment and prevent and control unhealthy or obnoxious odors." Thus, under the lease, Landry was justified in evicting Hornstein for Hornstein's failure to keep the premises clean, see n. 1, as well as for Hornstein's failure to pay rent promptly.
[3] At the time Landry allegedly made this statement, Landry may have honestly and justifiably intended to "get rid of" Hornstein for Hornstein's failure to pay his rent on time. An earlier suit by Landry to remove Hornstein for Hornstein's failure to pay his rent when due was settled in November, 1981.