647 So.2d 812 (1994)
ETHAN ALLEN, INC., Appellant,
v.
GEORGETOWN MANOR, Inc., Appellee.
No. 81872.
Supreme Court of Florida.
November 10, 1994.
Rehearing Denied January 11, 1995.
*813 Andrew L. Frey and Michael A. Vatis of Mayer, Brown & Platt, Washington, DC, for appellant.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, Daniels, Kashtan & Fornaris, P.A., Coral Gables, and Hall, O'Brien & Sack, P.A., Miami, for appellee.
GRIMES, Chief Judge.
This case is before the Court to review a question of law certified by the United States Court of Appeals for the Eleventh Circuit in Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir.1993). The question is expressed as follows:
Under Florida law, in a tortious interference with business relationships tort action, may a plaintiff recover damages for the loss of goodwill based upon future sales to past customers with whom the plaintiff has no understanding that they will continue to do business with the plaintiff, or is the plaintiff's recovery of damages limited to harm done to existing business relationships pursuant to which plaintiff has legal rights, as discussed in Landry v. Hornstein, 462 So.2d 844, 846 (Fla. 3d DCA 1985); Douglass Fertilizers & Chemical, Inc. v. McClung Landscaping, Inc., 459 So.2d 335, 336 (Fla. 5th DCA 1984); Insurance Field Services, Inc. v. White & White Inspection and Audit Service, Inc., 384 So.2d 303, 306 (Fla. 5th DCA 1980); and Lake Gateway Motor Inn v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769, 771-72 (Fla. 4th DCA 1978)?
*814 Id. at 1544. We have jurisdiction pursuant to article V, section 3(b)(6) of the Florida Constitution.
This case stems from the unravelling of a business relationship between Ethan Allen, Inc. (Ethan Allen), a furniture manufacturer, and its former furniture dealer, Georgetown Manor, Inc. (Georgetown). In December 1984, a dispute arose concerning Georgetown's credit to Ethan Allen for future furniture deliveries. In January 1985, Georgetown informed Ethan Allen that it had decided to convert its five Ethan Allen galleries to Thomasville Furniture Industries, Inc., furniture outlets. Georgetown's owner formed a new corporation to operate the new furniture galleries at the old Georgetown locations. Georgetown Manor, 991 F.2d at 1535. In February 1985, Ethan Allen placed a one-day ad in several south Florida newspapers. The ad announced the split between Georgetown and Ethan Allen. It related that Ethan Allen had discontinued distributing furniture to Georgetown because Georgetown was not current on its debts to Ethan Allen. Further, the ad stated that Ethan Allen was opening new furniture outlets. It asked those customers who had unfilled orders with Georgetown to contact the new Ethan Allen outlets, and promised to fill the orders expeditiously. Id. at 1535-36.
Subsequently, Georgetown sued Ethan Allen in federal district court. One of the claims in Georgetown's final amended complaint alleged that Ethan Allen had tortiously interfered with Georgetown's advantageous business relationship with its "customers, past present and future" by publishing the February advertisement. Id. at 1537. Georgetown alleged that the ad tortiously interfered with its relationship with customers who had existing orders with it for Ethan Allen furniture by causing them to cancel their orders and demand refunds, resulting in a loss of the profits that Georgetown would have made on those orders. Georgetown also claimed that the ad interfered with its prospective "relationship" with 89,000 people who had shopped at Georgetown in the past and might shop there again in the future. It further alleged the loss of future business from these people destroyed Georgetown's entire value as an ongoing business.
At the end of the trial, the jury found that Ethan Allen had intentionally and maliciously interfered with Georgetown's business relationships by publishing the ad and that this interference proximately caused damage to Georgetown in the compensatory amount of $285,000 for lost profits on existing contracts, and $7,380,000 for the "loss of the value of Georgetown's business, including goodwill." Id. On appeal, the Eleventh Circuit Court of Appeals affirmed the jury's award for lost profits. Id. at 1542. However, the court certified the question regarding whether Georgetown could recover for the loss of its goodwill with past customers under a tortious interference with a business relationship theory. Id. at 1544.
The elements of tortious interference with a business relationship are "(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla. 1985). A protected business relationship need not be evidenced by an enforceable contract. Id. However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." Register v. Pierce, 530 So.2d 990, 993 (Fla. 1st DCA 1988).
An action for intentional interference is appropriate even though it is predicated on an unenforceable agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered. United Yacht Brokers v. Gillespie, 377 So.2d 668 (Fla. 1979); Scussel v. Balter, 386 So.2d 1227 (Fla. 3d DCA 1980), review denied, 392 So.2d 1371 (Fla. 1981). A mere offer to sell, however, does not, by itself, give rise to sufficient legal rights to support a claim of intentional interference with a business relationship. Lake Gateway Motor Inn, Inc. v. Matt's Sunshine Gift Shops, Inc., 361 So.2d 769 (Fla. 4th DCA 1978), cert. denied, 368 So.2d 1370 (Fla. 1979).
Landry v. Hornstein, 462 So.2d 844, 846 (Fla. 3d DCA 1985); see also Charles Wallace *815 Co. v. Alternative Copier Concepts, Inc., 583 So.2d 396, 397 (Fla. 2d DCA 1991) ("[A]n action for intentional interference with a business relationship or expectancy will lie if the parties' understanding would have been completed if the defendant had not interfered."); United Yacht Brokers v. Gillespie, 377 So.2d 668 (Fla. 1979) (claim for tortious interference can be maintained even though business relationship is based on a contract which is void and unenforceable).
In Landry, a pharmacist who rented premises for his drugstore entered into negotiations, with his landlord's permission, with a prospective purchaser to sell the pharmacist's business and to assign the pharmacy lease. Id. However, when the landlord, or the landlord's attorney, told the prospective buyer that the landlord was "going to get rid of" the pharmacist and that the landlord would rent the premises directly to the buyer, the negotiations between the pharmacist and the prospective buyer ceased. Id. at 847. Subsequently, the prospective buyer leased the drugstore from the landlord and the pharmacist sued the landlord for intentional interference with a business relationship. Id. at 846. The district court found a business relationship existed between the pharmacist and the prospective buyer, stating:
[T]he negotiations had progressed beyond the stage of a mere offer, to an understanding between [the pharmacist and the prospective buyer] for the sale of the business and assignment of the lease, transactions which would have been consummated had [the landlord] not interfered. Evidence disclosed that [the landlord] or his attorney had undertaken their own negotiations with [the buyer] regarding the rental of the drugstore premises while [the buyer and the pharmacist] were still involved in negotiations.
Id. at 846-47.
In Florida, a plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large. Southern Alliance Corp. v. Winter Haven, 505 So.2d 489, 496 (Fla. 2d DCA 1987). As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.
Turning to the instant case, it is clear that Georgetown was entitled to the damages reasonably flowing from Ethan Allen's interference with its existing business relationships. However, it is equally clear that Georgetown's relationship with its past customers was not one upon which a claim for tortious interference with a business relationship could be based. Georgetown had no identifiable agreement with its past customers that they would return to Georgetown to purchase furniture in the future. The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim.[1] Accordingly, Georgetown may not recover, in a tortious interference with a business relationship tort action, damages where the "relationship" is based on speculation regarding future sales to past customers.
Having answered the certified question of law, we return the record to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Sr. J., concur.
NOTES
[1] We find the case of Insurance Field Services, Inc. v. White & White Inspection & Audit Service, Inc., 384 So.2d 303 (Fla. 5th DCA 1980), upon which Georgetown heavily relies, to be distinguishable. In that case, a company had been regularly performing underwriting inspections, premium audits, and loss control work for sixteen insurance company clients. The ongoing relationship with which the tortfeasor interfered there was far different than the one maintained by a retail furniture dealer with 89,000 past customers.