**TELDAR COMMUNICATIONS NETWORK, INC.,**
Plaintiff,

v.

**MCI COMMUNICATIONS CORP. and MCI International, Inc.**

No. 97–8621–Civ.

United States District Court,
S.D. Florida.

March 30, 1999.

Curtis Carlson, Miami, Florida, for plaintiff.

Thomas Meeks and Beatriz Galbe, Miami, Florida, Andrew Spangler, Jr., Daron Fitch, and Ross Bricker, Chicago, Illinois, for defendant.

### ORDER AFFIRMING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

HIGHSMITH, District Judge.

THIS CAUSE is before this Court for review. On January 19, 1999, United States Magistrate Judge Barry L. Garber issued a Report and Recommendation with respect to Defendants' Motion to Dismiss Second Amended Complaint. Magistrate Judge Garber recommends that Defendants' Motion be granted in its entirety.

Upon due consideration of Magistrate Judge Garber's Report, Defendants' objections and Plaintiff's response thereto, and independent review of the pertinent portions of the record, it is

ORDERED AN ADJUDGED that the Court AFFIRMS and ADOPTS the Report and Recommendation. Plaintiff's Complaint is DISMISSED WITH PREJUDICE. This Case is CLOSED and all pending motions are DENIED AS MOOT.

DONE AND ORDERED.

### REPORT AND RECOMMENDATION

GARBER, Magistrate Judge.

THIS CAUSE is before this Court on Defendant's Motion to Dismiss pursuant to an Order of Reference issued by United States District Judge Shelby Highsmith. No hearing was held on this Matter.

## PROCEDURAL BACKGROUND

On or about October 24, 1997, Plaintiff Teldar Communications Network Inc. ("Teldar") filed a three-count First Amended Complaint. Count I asserted a claim for tortious interference with Plaintiff's relationships with various hotels. Count II asserted a claim for tortious interference with its relationship with MCI International Telecommunications. In Count III, Plaintiff asserted a claim for unfair competition. On November 14, 1997, Defendants filed a motion to dismiss which was converted to a motion for summary judgment by Court Order on February 11, 1998. On June 17, 1998, the Court entered an Order granting Defendant's Motion for Summary Judgment as to Counts I and II, but permitting Plaintiff to amend its Complaint as to its other counts. (*See* June 17, 1998 Order).

The pending Motion to Dismiss addresses Plaintiff's Second Amended Complaint ("the Complaint"). The Complaint consists of four counts. The first two allege that Defendants tortiously interfered with Plaintiff's business relationship with a company called Teleconnect. The second two counts rest on the same factual scenario but allege that Defendants have engaged in unfair competition.

## PARTIES, RELATED ENTITIES AND AGREEMENTS AT ISSUE

MCI Communications Corporation ("MCIC")[1] is the parent company of the two named Defendants, MCI International, Inc. ("MCII") and MCI Telecommunications Corp. ("MCIT"). MCIC is also the parent of another subsidiary, Telecom USA, Inc. ("T*USA"). T*USA, in turn, has a subsidiary named Teleconnect Co., Inc. ("Teleconnect") that allegedly had a business relationship with Teldar Communications, Inc. ("Teldar") which is the subject of this lawsuit.

In ruling on Defendants' prior summary judgment motion, the Court found that in February 1995, MCIT and T*USA entered into virtually identical agreements with Integrated Communications Corporation ("ICC"), appointing ICC as an agent to solicit orders on behalf of MCIT and T*USA for certain operator-assisted phone calls ("the MCI/ICC Agreements"). (*See* June 17, 1998 Order at 3). The Agreements permit ICC to delegate any or all of its agency appointment to a third party who would then be bound by the same terms of the MCI/ICC Agreements. (*See* June 17, 1998 Order at 3–4). The Agreements provided that ICC did not have an exclusive agency to solicit customers for MCIT or T*USA. (*See* June 17, 1998 Order at 4).

## FACTUAL BACKGROUND

This Complaint arises from Plaintiff's alleged arrangement with Teleconnect by which it would solicit hotels outside the United States to participate in a program known as MCI International Hotel Direct Operator Services (hereinafter "IHD"). IHD was designed to provide international hotels with a means for capturing commissions on international long distance calls placed by their customers. From March 1995 to early March 1996, IHD was identified as an MCI product. (*See* June 17, 1998 Order at 4). During this period, an officer of MCII signed contracts with hotel customers on behalf of MCI. (*See* June 17, 1998 Order at 4). In March 1996, MCIC changed the product's name from IHD to International Hotel Connect ("IHC")[2] and transferred it to MCIC's subsidiary, Telecom USA ("T*USA"). (*See* June 17, 1998 Order at 4). After that date, an officer of T*USA's subsidiary, Teleconnect, signed IHC contracts on behalf of MCIC. (*See* June 17, 1998 Order at 4).

---

1. Prior to Plaintiff's amendment of its Complaint, MCIC was a defendant in this case.

2. For ease of reference, the Court will refer to the program as "IHD" throughout the Report and Recommendation.

In July 1995, ICC, an agent for MCIT and T*USA, entered into an agreement with Teldar delegating the agency established in the MCI/ICC Agreements to Teldar to solicit IHD customers. (*See* June 17, 1998 Order at 4). ICC agreed to instruct MCIT or T*USA to pay Teldar a commission based upon the monthly usage revenues from orders solicited by Teldar and accepted by ICC. (*See* June 17, 1998 Order at 4–5). The crux of Plaintiff's allegations are that Defendants tortiously interfered in its solicitation of business for the IHD program. That interference allegedly deprived Plaintiff of commissions.

Plaintiff alleges that MCIC structured IHD so that it would be marketed by independent sales organizations such as Plaintiff Teldar. (Second Amended Complaint (hereinafter "Complaint") ¶ 11). Plaintiff also alleges that MCII established a practice whereby an independent contractor, such as Teldar, would notify Defendant MCII that it planned to solicit a particular hotel owner. (Complaint ¶ 11). Assuming no other sales organization had targeted that hotel, Plaintiff alleges that the organization would be given an exclusive right to solicit the hotel. (Complaint ¶ 11). This authorization was communicated orally or via electronic mail. (Complaint ¶ 11). Plaintiff claims that it began soliciting hotels in July 1995. (Complaint ¶ 14). At least three large hotels—Carlson, Sheraton and Hilton (hereinafter "the hotels")—allegedly expressed interest in the IHD program to Teldar. Plaintiff claims that Defendants granted it the ex-

clusive right to solicit those hotels. (Complaint ¶¶ 15–18).[3]

Plaintiff alleges that after it had invested significant time and effort in recruiting the hotels, Defendants tortiously interfered with its efforts in two ways. First, Plaintiff claims that employees of Defendants suggested to the hotels that they deal with MCI directly, thereby bypassing Plaintiff. (*See, e.g.,* Complaint ¶ 27). Second, Plaintiff accuses Defendants of sabotaging its efforts by delaying the execution of contracts, failing to provide rate comparisons, limiting the number of countries in which IHD could be sold, and discontinuing the use of the name "MCI" in connection with IHD. (Complaint ¶ 32). Finally, Plaintiff alleges that Defendants tortiously interfered with its business relationship with Teleconnect, and that "[i]n all probability Teleconnect would have performed its obligations to Teldar if Defendants had not interfered." (Complaint ¶¶ 43, 52). The Court has already ruled that whatever relationship Plaintiff had with the hotels, it did not afford Teldar any prospective legal or contractual rights vis-a-vis the hotels. (*See* June 17, 1998 Order at 8). Accordingly, the only rights implicated by Teldar's relationship with the hotels were Plaintiff's rights to receive commissions. (*See* June 17, 1998 Order at 9).

## STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a claim on the basis of a dispositive issue of law. *Burger King Corp. v. Holder,* 844 F.Supp. 1528, 1529 (S.D.Fla.1993) citing

---

**3.** This Court has already ruled on the prior motion for summary judgment that ICC was not granted an exclusive right to solicit customers for MCIT or T*USA. (*See* June 17, 1998 Order at 4). Accordingly, Plaintiff, as a sub-agent for ICC, likewise would not have exclusive solicitation rights. Plaintiff appears to allege that to the extent that the contracts at issue provided non-exclusive rights to solicit, Defendants modified those contracts by their regular business practices as well as written and oral communications. (*See* Complaint ¶¶ 16–18). Indeed, Plaintiff claims that it had exclusive authorization to deal with the

hotels to the exclusion of Defendant's agents and employees. (Complaint ¶ 31). The Court notes, however, that the Telecom/ICC Agreement specifically provides that the "Agreement may not be modified, changed, altered, or amended except by an express written agreement signed by duly authorized representatives of the parties hereto." (*See* Telecom/ICC Agreement at ¶ 12). Plaintiff has not alleged such an amendment, and in fact, Plaintiff's allegations explicitly state that its authorizations were oral or sent via electronic mail. Such "amendments" have no effect under the operative Telecom/ICC Agreement.

*Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The Court primarily considers the allegations as stated in the Complaint, but it may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Response Oncology, Inc. v. MetraHealth Ins. Co.,* 978 F.Supp. 1052, 1058 (S.D.Fla. 1997); *see also* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 at 299 (1990). It must accept the complaint's allegations as true and resolve all factual issues in favor of the non-moving party. *Quinones v. Durkis,* 638 F.Supp. 856, 858 (S.D.Fla.1986). The threshold of sufficiency that a complaint must meet is "exceedingly low." *Florida College of Osteopathic Med. Inc. v. Dean Witter Reynolds, Inc.,* 982 F.Supp. 862, 864 (M.D.Fla.1997) (citing *Ancata v. Prison Health Servs.,* 769 F.2d 700, 703 (11th Cir.1985)). Accordingly, a claim may be dismissed pursuant to Rule 12(b)(6) only if it is clear that no relief can be granted under any facts consistent with the allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 72, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

In order to state a claim upon which relief may be granted, Fed.R.Civ.P. 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court must take "the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the Plaintiff." *Burch v. Apalachee Community Mental Health Servs., Inc.,* 840 F.2d 797, 798 (11th Cir.1988) (citation omitted), *aff'd,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The law in this Circuit is well-settled that "the 'accepted rule' for appraising the sufficiency of a complaint is 'that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.'" *S.E.C. v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir.1988) (quoting *Con-*

*ley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). The moving party bears a heavy burden. *St. Joseph's Hosp., Inc. v. Hospital Corp. of Am.,* 795 F.2d 948, 953 (11th Cir.1986).

### DISCUSSION

█ In Florida, the elements of a claim for tortious interference with a business relationship are the following:

1. Existence of a business relationship under which plaintiff has legal rights;

2. Knowledge of the relationship by defendant;

3. An intentional and unjustified interference with the relationship by a third party; and

4. Damage to the plaintiff as the result of the breach of the business relationship.

*Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 814 (Fla.1994); *see also Pyles v. United Air Lines, Inc.,* 79 F.3d 1046, 1049 (11th Cir.1996). Defendants have moved to dismiss Plaintiff's Complaint on a number of grounds. First, they claim that Plaintiff's claims are based on a contract that, if it existed at all, would fail for lack of consideration and thus cannot serve as the basis for this tortious interference claim. Second, even if a contract existed, Plaintiff has failed to allege any breach by Teleconnect. Third, MCIT reserved the right to compete with ICC and its agents, including Teldar, and thus its alleged actions are nothing more than competition contemplated by the contract. Fourth, Defendants claim that they have a qualified privilege to interfere with the contract by virtue of their financial interest in Teleconnect. Finally, Defendants contend that if the Court dismisses the tortious interference claim, the unfair competition claim must fail as well. The Court finds that Plaintiff has not alleged a breach

in its alleged relationship with Teleconnect as required by Florida law. Accordingly, the entire Complaint should be dismissed.

## I. Plaintiff Has Failed To Allege A Breach Of Its Alleged Agreement With Teleconnect And Thus Cannot State A Claim For Tortious Interference.

■ The Court has already ruled that "[w]hatever relationship existed between Teldar and the hotels, it did not afford Teldar any prospective legal or contractual rights vis-a-vis the hotels." (*See* June 17, 1998 Order at 8). The allegations in Plaintiff's Complaint allege that it had a business relationship with Teleconnect[4] with which Defendants tortiously interfered. (Complaint ¶¶ 39, 43, 48, 52). Plaintiff contends that its agreement with Teleconnect provided that Plaintiff would solicit hotel owners to participate in IHD; Teleconnect would provide operators and long distance service; and Plaintiff would receive commissions equal to 10% of the revenues generated. (Complaint ¶ 39). Plaintiff alleges that Defendants tortiously interfered with that relationship in that its representatives contacted hotels being solicited by Plaintiff and essentially convinced them to deal directly with MCIT rather than Plaintiff. (Complaint ¶¶ 23, 25, 27). Had Teldar been able to' secure those contracts, it alleges that "[i]n all probability Teleconnect would have performed its obligations." (Complaint ¶ 43). As a result, Plaintiff claims that it was deprived of the benefits of its business relationship with Teleconnect. (Complaint ¶¶ 44, 53).

In order to state a claim for tortious interference, Plaintiff must allege a breach. *Gerber v. Keyes Co.*, 443 So.2d 199, 201 (Fla. 3d DCA 1983) (dismissing

tortious interference claim where there was no breach when plaintiff received commission as provided in the contract). Plaintiff claims that its situation is analogous to the facts presented in two cases in which courts have found valid claims for tortious interference: *Charles Wallace Co. v. Alternative Copier Concepts, Inc.*, 583 So.2d 396 (Fla. 2d DCA 1991) and *Landry v. Hornstein*, 462 So.2d 844 (Fla. 3d DCA 1985).

In *Charles Wallace*, the court reversed an order granting a motion to dismiss plaintiff's claim of tortious interference. In that case, plaintiff had submitted a winning bid to a company called GECC for several copying machines. *Charles Wallace*, 583 So.2d at 397. The parties agreed on a price and when and how the equipment would be delivered. *Id.* Plaintiff then contacted the defendant and proposed selling it a large number of the copiers that plaintiff was purchasing from GECC. *Id.* During the course of the negotiations with defendant, Plaintiff revealed that GECC was the supplier of the machines. *Id.* Defendant then contacted GECC and purchased the machines designated for plaintiff's purchase directly from GECC, resulting in a breach of GECC's agreement with plaintiff. *Id.* The Court found that under those circumstances, plaintiff alleged a cause of action because the understanding between GECC and plaintiff would have been completed had Defendant not interfered. *Id.*

In *Landry*, the court found that sufficient evidence supported the jury's finding that plaintiff and a prospective buyer had reached an understanding regarding the sale of a business and assignment of a lease. *Landry*, 462 So.2d at 846–47. Subsequently, the defendant, plaintiff's land-

---

4.  Defendants argue that Plaintiff has failed to meet the first prong of the tortious interference test because there was no agreement or contract between Plaintiff and Teleconnect. Plaintiff counters that it need not have had an enforceable or valid contract to state a claim for tortious interference. *See United Yacht Brokers, Inc. v. Gillespie*, 377 So.2d 668 (Fla.

1979). Because the Court finds that Plaintiff has not alleged a breach of the alleged contract, it need not address whether Plaintiff has adequately pled this element. Accordingly, the Court assumes for purposes of this Report and Recommendation that Plaintiff has adequately pled a contract or business relationship between it and Teleconnect.

lord, told the prospective buyer that he was going to "get rid of" the plaintiff and would rent the premises directly to the prospective buyer. *Id.* at 847. The Court found that defendant's actions unjustifiably interfered with the business relationship that had progressed from a mere offer to an understanding between plaintiff and the buyer. *Id.* at 846–47. As was the case in *Charles Wallace*, the court ruled that "[a]n action for intentional interference is appropriate even though it is predicated on an unenforceable agreement, if the jury finds that an understanding between the parties would have been completed had the defendant not interfered." *Id.* at 846.

Both of the above cases at first glance appear to be persuasive, but upon further analysis, the Court finds that they are inapplicable in this case. Plaintiff focuses on the language that an understanding "would have been completed" in arguing that the fact that it would have collected commissions but for Defendants' actions states a claim for tortious interference. In both of the above cases, the courts found that the parties had existing obligations which would have been met if the third-party had not interfered. The courts' focus on the "would have" language in those cases goes to the fact that the parties did not have a binding, written legal contract. Plaintiff appears to argue that the subjunctive language permits this Court to enter into a crystal ball exercise predicting what the parties and the hotels would have done in other circumstances. The Court does not agree with that interpretation.

The other important distinction between *Charles Wallace*, *Landry* and this case is that the other two cases involved a third party inducing a party to an agreement not to perform its existing obligations under that agreement. In this instance, however, there are essentially four parties according to Plaintiff's allegations. Parties A and B (Plaintiff and Teleconnect) have an agreement. Party A negotiates with Party C (the hotels) in the hopes of securing commissions under its agreement with B. Party D (Defendants) interferes with A's negotiations with C, and thus A does not collect commissions under its agreement with B. Party B, however, never refuses to perform or pay the commissions under the terms of its agreement with A. Although Plaintiff's allegations appear to allege interference with its *potential* agreements with the hotels, the Court has already held that Plaintiff had no prospective legal rights vis-a-vis the hotels. Plaintiff's only hope for stating a claims is alleging interference with its relationship with Teleconnect, but it cannot allege a breach. Accordingly, the claim should be dismissed.[5]

## II. Plaintiff's Allegations Of Unfair Competition Are Identical To Its Claims For Tortious Interference And Should Be Dismissed.

Counts III and IV of Plaintiff's Complaint seek to allege claims for unfair competition against each Defendant. In support of those counts, Plaintiff realleges its previous allegations and states that Defendants "misappropriated Plaintiff's existing or prospective legal rights for its own, and employed unfair and improper means to do so, as more particularly set forth above." (Complaint ¶ 56). Plaintiff correctly asserts in its response that it may pursue multiple claims against Defendants under different theories of liability.[6] Indeed

5. An analogous situation might be an agreement between an airline and a travel agent whereby the airline promises to pay the travel agent a commission for each sale the agent makes. Prior to agreeing to purchasing a ticket, a potential customer is informed that she can get the same ticket on the airline's web site for less money and purchases her ticket there. The travel agent would have no cause of action against the airline because she never had an agreement with the purchaser, and she never earned the right to a commission from the airline pursuant to the agreement.

6. The only cases applying Florida law cited by Plaintiff indicate that tortious interference and unfair competition may be part of the

Rule 8(a) of the Federal Rules of Civil Procedure provides for alternative pleading. Nevertheless, the Court should dismiss these counts.

■ Plaintiff has not alleged any additional facts in support of its unfair competition claim. Indeed, the rights that were allegedly misappropriated had not yet accrued to Plaintiff. Plaintiff has not alleged that it had any right to commissions from Teleconnect. Moreover, under Florida law, tortious interference is one type of actionable unfair competition. *See Manufacturing Research Corp. v. Greenlee Tool Co.*, 693 F.2d 1037, 1040 (11th Cir.1982) (applying Florida law and finding that interference with business relations is a subcategory of unfair competition). Given that Plaintiff has not alleged any additional facts in support of its claims of unfair competition, the court finds that those counts should be dismissed for the same reasons it recommends dismissal of Counts I and II.

### RECOMMENDATION

For the foregoing reasons, this Court respectfully recommends that Defendant's Motion to Dismiss be GRANTED.

The parties have ten (10) days from the date of this Report and Recommendation to file written objections, if any, with the Honorable Shelby Highsmith, United States District Judge. *See* 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. *LoConte v. Dugger*, 847 F.2d 745, 750 (11th Cir.), *cert. denied*, 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 19th day of January, 1999.

---

same complaint, but those cases do not discuss the tort of unfair competition in any way. *See AG Rotors, Inc. v. Haverfield Corp.*, 585 So.2d 429 (Fla. 3d DCA 1991) (plaintiff alleged unfair competition and tortious interference); *Sethscot Collection, Inc. v. Drbul*, 669 So.2d 1076 (Fla. 3d DCA 1996) (same).