[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 18, 2008
THOMAS K. KAHN
CLERK

No. 07-14828
Non-Argument Calendar

_____

D. C. Docket No. 07-00081-CV-5-RS-MD

MQ ASSOCIATES, INC.,

Plaintiff-Appellant,

versus

NORTH BAY IMAGING, LLC,
BRUCE WOOLUM,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(March 18, 2008)**

Before ANDERSON, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

MQ Associates, Inc. ("MedQuest") brought this diversity action against its

former employee, Bruce Woolum, and Woolum's company, North Bay Imaging, LLC ("North Bay"), to enforce a non-competition agreement. Though MedQuest prevailed in the district court, it was unsatisfied with the equitable remedy the court crafted, so it appealed. We affirm.

## I. BACKGROUND

MedQuest owns and operates outpatient diagnostic imaging facilities. MedQuest runs the Panama City, Florida "Open MRI Center," which performs Magnetic Resonance Imaging ("MRI"), Computed Tomography Scans ("CT scans"), and x-rays. Woolum worked in various capacities at the Open MRI Center—first as an MRI technologist, then as the Center's manager, and finally as MedQuest's Area Manager. During his tenure as the Center Manager, Woolum executed a non-competition agreement in exchange for stock options and continued at-will employment. The agreement prohibited Woolum, for 24 months from the termination of employment, from soliciting MedQuest employees (the solicitation prohibition) or competing with MedQuest, "directly or indirectly," within 25 miles of the Open MRI Center (the competition prohibition). Furthermore, the agreement contained the following "Extension" provision: "If [Woolum] violates the provisions [stated above], [Woolum] shall continue to be bound by the restrictions set forth [above] and the Non-Compete Period shall continue until the

2

expiration of a cumulative period of twenty four months after the cessation of the violation." The parties agreed that the contract would be governed by Delaware law.

After six years, Woolum decided to leave MedQuest and start his own company. He created a business plan to open a competing diagnostic imaging center in the Panama City area. To that end, he and his investors formed North Bay; he became Managing Member and was given a 50% stake in the venture. He resigned from MedQuest on March 17, 2006. The following month, North Bay leased business space for its imaging center less than two miles from the Open MRI Center. For the next year, North Bay continued to make preparations to open an imaging center to compete with MedQuest. On March 27, 2007, as part of those preparations, Woolum offered a job at North Bay to Sara Stock, a MedQuest employee.

In April 2007, MedQuest brought this action seeking to enforce the non-competition agreement. The district court preliminarily enjoined North Bay from opening. After a bench trial, the court held that the agreement was valid and enforceable. The court interpreted the "Extension" provision to operate on a prohibition-by-prohibition basis; that is, if Woolum violated the solicitation prohibition, the solicitation prohibition's duration would be extended while the

3

competition prohibition's duration would remain the same. It held that, though Woolum violated the solicitation prohibition by attempting to recruit Sara Stock, Woolum had not violated the competition prohibition because North Bay had yet to open, so MedQuest had faced no additional competition—direct or indirect—from Woolum.

Given these conclusions, the court held that the agreement should be enforced as follows: (1) Woolum is enjoined from soliciting MedQuest employees until March 2009 (two years from the Sara Stock solicitation); (2) Woolum is enjoined from competing with the Open MRI Center's MRI scan, CT scan, and x-ray business within 25 miles of the Center until March 17, 2008 (two years from his resignation); and (3) North Bay is enjoined in the same fashion "so long as there is any existing relationship between Defendant Woolum and Defendant North Bay." The district court dismissed MedQuest's claims for injunctive relief based on tortious interference with contractual relations—one claim based on North Bay's alleged interference with Woolum's non-compete agreement and one claim based on both defendants' alleged interference with MedQuest's business relationships with customers.

MedQuest, unsatisfied with the scope of the injunction, appealed. It argues that the district court erred in failing to extend the competition prohibition beyond

4

the initial, two-year period. It also appeals the proviso placed on North Bay's injunction—that North Bay is only bound while it has ties to Woolum. Finally, MedQuest appeals the dismissal of its tortious interference claims.

## II. STANDARDS OF REVIEW

"We ordinarily review a district court's decision to grant or deny an injunction for clear abuse of discretion. Underlying questions of law, however, are reviewed *de novo*." *Major League Baseball v. Crist*, 331 F.3d 1177, 1183 (11th Cir. 2003) (citation omitted). MedQuest argues that *de novo* review also applies to questions of law underlying the *scope* of the injunction. This is incorrect; we review the scope of an injunction—a matter entirely within the realm of equity—only for an abuse of discretion. *Palmer & Cay, Inc. v. Marsh & McLennan Cos., Inc.*, 404 F.3d 1297, 1308 (11th Cir. 2005); *see also Harden v. Christina Sch. Dist.*, 924 A.2d 247, 269 (Del. Ch. 2007) ("Should more tailored relief be necessary, this court is empowered to fashion any remedy required by equity.").

"We review a district court's grant of a motion to dismiss *de novo*, taking as true the facts as they are alleged in the complaint." *Phoenix of Broward, Inc. v. McDonald's Corp.*, 489 F.3d 1156, 1161 (11th Cir. 2007) (quoting *Owens v. Samkle Auto. Inc.*, 425 F.3d 1318, 1320 (11th Cir.2005)).

5

## III. ANALYSIS

*A.     Duration of the Competition Prohibition*

MedQuest argues that the district court should have extended the duration of the competition prohibition beyond its original, two-year period for two reasons: (1) the district court erred in interpreting the "Extension" provision to apply on a prohibition-by-prohibition basis because the provision's unambiguous terms provide that if any prohibition is violated, the duration of all prohibitions must be extended; and (2) even if the district court correctly interpreted the "Extension" provision, the district court erred in determining that Woolum did not violate the competition prohibition when he participated in North Bay's formation and start-up.

First, taking the arguments in reverse order, we conclude that Woolum did not breach the competition prohibition by participating in North Bay's formation and start-up. MedQuest cites the unpublished, trial court memorandum in *Tristate Courier & Carriage, Inc. v. Berryman*, No. C.A. 20574-NC, 2004 WL 835886 at * 9 (Del. Ch. Apr. 15, 2004), for the proposition that preparing to open a competing business during the non-compete period constitutes indirect competition. This is incorrect. In *Berryman*, the competing venture was open and running; the direct competition from the competing venture transformed the former employee's

6

otherwise-legitimate start-up activity into indirect competition. Here, on the other hand, North Bay never opened, so MedQuest has not faced indirect competition from Woolum because it has not faced any competition at all. We reject MedQuest's request to extend its non-competition agreement to cover merely preparing to compete.

Second, we conclude that the district court did not abuse its discretion in applying the "Extension" provision on a prohibition-by-prohibition basis. Section 2 of the non-compete agreement contains the solicitation prohibition and the competition prohibition in separate subsections. Section 3, the "Extension" provision, states: "If [Woolum] violates the provisions of Section 2, [Woolum] shall continue to be bound by the restrictions set forth in Section 2 and the Non-Compete Period shall continue until the expiration of a cumulative period of twenty four months after the cessation of the violation." MedQuest urges a wooden reading of the second clause, noting that it states that the plural "restrictions" will be extended if the clause is triggered.[1]

Even if the "Extension" provision must, as a matter of law, be interpreted as

_____

[1] Medquest, however, ignores that applying that same wooden reading to the initial clause results in an extension only occurring where the plural "provisions" are violated. In other words, only if Woolum were to breach both the competition prohibition and solicitation prohibition would an extension occur. Thus, if the contract is unambiguous, its unambiguous meaning is that both prohibitions will be extended, but only where both prohibitions have been violated. Under this reading, the "Extension" provision would not apply because Woolum only violated the solicitation prohibition.

7

MedQuest urges and breach of one prohibition triggers extension of both prohibitions, it was well within the district court's broad discretion to craft a more-limited equitable remedy—prohibition-by-prohibition extension—"to protect the interests of the parties." *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003). Woolum violated only the solicitation prohibition; it was sufficient to protect MedQuest's interests to extend only that prohibition.[2]

## B.    *North Bay's Enjoinder*

Conditioning North Bay's enjoinder on Woolum's continued connection to North Bay was likewise within the district court's broad discretion to tailor its equitable remedy to the parties' interests. *Id.* MedQuest's interest in enjoining North Bay derives entirely from its interest in preventing competition from its former employee, Woolum. If Woolum's connection to North Bay is severed, MedQuest's interest in enjoining North Bay weakens significantly. We therefore affirm the condition placed on North Bay's injunction as within the district court's equitable discretion.

## C. Dismissal of MedQuest's Tort Claims

MedQuest brought two Florida tort claims against the defendants: one against North Bay for tortiously interfering with the non-competition agreement by

---

[2] North Bay does not appeal the extension of the solicitation prohibition.

naming Woolum the Managing Member, the other against both Woolum and North Bay for interfering with its business relationships with its customers. MedQuest sought only injunctive relief, claiming that it had no adequate remedy at law for either tort. The district court granted, without any analysis, the defendants' motion to dismiss both counts.

The district court properly dismissed both of MedQuest's tort claims. An intentional interference claim under Florida law requires, *inter alia*, a contract or business relationship "under which the plaintiff has legal rights," and interference "which induces or otherwise causes the third person not to perform." *Seminole Tribe v. Times Pub. Co.*, 780 So. 2d 310, 315 (Fla. 4th DCA 2001). The claim against North Bay for interfering with performance of the non-compete was properly dismissed because, as discussed above, Woolum's involvement with North Bay as Managing Member—the only act on which MedQuest bases the claim—did not constitute a breach of the non-competition agreement.

Similarly, the claim against Woolum and North Bay for intentional interference with MedQuest's customer relationships was properly dismissed because MedQuest did not identify any legal rights at stake, and it did not allege any instances of customers not performing pursuant to those legal rights. "As a general rule, an action for tortious interference with a business relationship

9

requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). Absent an allegation of an "identifiable agreement with its past customers that they would return" for future business, MedQuest has failed to state a claim. *Id.* "The mere hope that some of its past customers may choose to buy again cannot be the basis for a tortious interference claim." *Id.*

## IV. CONCLUSION

The scope of the injunction crafted by the district court was well within its broad discretion. Furthermore, the district court properly dismissed MedQuest's tort claims. For these reasons, we affirm the district court's judgment.

**AFFIRMED.**