823 So.2d 132 (2002)
George G. LEVIN, Gayla Sue Levin, individually, Georgetown Manor, Inc., and Furniture Industries of Florida, Inc., corporations, Appellants,
v.
ETHAN ALLEN, INC., Appellee.
No. 4D00-3942.
District Court of Appeal of Florida, Fourth District.
April 17, 2002.
Rehearing Denied August 26, 2002.
*133 Woodrow M. Melvin, Jr. of Woodrow "Mac" Melvin, Jr., P.A., Miami, for appellants.
Jeffrey P. Shapiro of Jeffrey P. Shapiro, P.A., Miami, for appellee.
KLEIN, J.
This appeal and cross-appeal are from a judgment finding that one transaction was a fraudulent transfer and that another was not. We affirm the finding that there was a fraudulent transfer and reverse on the cross-appeal.
This case arises out of a prior business relationship between Ethan Allen, the furniture manufacturer, and the Levins, who operated several Ethan Allen furniture stores through Georgetown Manor, Inc. In January 1985, following a dispute between Georgetown and Ethan Allen, Georgetown informed Ethan Allen that it was converting its five Ethan Allen stores to Thomasville Furniture stores. Ethan Allen then placed an ad in several South Florida newspapers announcing the split, stating that Ethan Allen had discontinued distributing furniture to Georgetown because Georgetown was behind on its debts to Ethan Allen, and asking customers with unfilled orders for Ethan Allen furniture to contact new Ethan Allen stores.
Georgetown sued Ethan Allen in federal court for tortious interference with Georgetown's advantageous business relationships. One of the claims was for lost future business from customers who had shopped at Georgetown stores in the past and might shop there again in the future. Ethan Allen filed a counterclaim against Georgetown for furniture which it had delivered, but for which it had not been paid.
The case went to trial, and a jury awarded Georgetown $285,000 for lost profits on existing contracts and $7,380,000 for the loss of future business which included goodwill. The jury also awarded approximately $2,500,000 to Ethan Allen on its counterclaim. Ethan Allen appealed the judgment against it to the Eleventh Circuit Court of Appeals, but Georgetown did not appeal the judgment against it on the counterclaim. The judgments were stayed during the appeal.
The future damage award for tortious interference was not supported by precedent in Florida, which prompted the eleventh circuit to certify the question to the Florida Supreme Court. Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir.1993). The Florida Supreme Court held that the damages were not recoverable under the theory of tortious interference. Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812 *134 (Fla.1994). The eleventh circuit then reversed the judgment against Ethan Allen. Georgetown Manor, Inc. v. Ethan Allen, Inc., 47 F.3d 1099 (11th Cir.1995). This left Ethan Allen with a judgment against Georgetown, which had no assets.
When the judgments were entered in the federal district court, in 1992, Georgetown owned two pieces of real estate, one in Dania and the other in Pompano Beach. During the appeal process, the Levins, who owned Georgetown, gained ownership of these properties, leaving Georgetown judgment proof. Ethan Allen filed this case asserting that Georgetown had fraudulently transferred the two properties to the Levins.
In 1993 Georgetown conveyed the Dania property to another company of the Levins, and a mortgage was placed on the Dania property in favor of the Levins. The Levins ultimately received $425,000 when the Dania property was sold, and Georgetown received nothing. The trial court found that this was a fraudulent transfer under Chapter 726, Florida Statutes.
The Levins argue that Georgetown was the creditor, not Ethan Allen. We disagree. A creditor is a person who has a claim, and a claim is very liberally defined as "a right to payment, whether or not the right is reduced to judgment ... contingent... unmatured, disputed ... or unsecured." § 726.102(3) and (4). Ethan Allen, by virtue of the judgment in its favor, met the statutory definition of creditor and could thus invoke Chapter 726.
The Levins also contend that at the time of the transfer Georgetown, having the larger judgment in its favor, was as a matter of law not insolvent as defined in section 726.103. This transfer could not, accordingly, have been fraudulent.
Section 726.103, Fla. Stat. (1993), however, defines insolvency as follows:
(1) A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation.
(2) A debtor who is generally not paying his debts as they become due is presumed to be insolvent.
What the Levins and the dissent overlook in arguing that Georgetown could not have been insolvent is that Georgetown was presumed insolvent under section 726.103(2), quoted above. The evidence was undisputed that Georgetown was not making the payments on the first mortgage on the Pompano property and had not paid the taxes on that property for several years at the time of the transfer. We therefore disagree that the judgment alone is sufficient to establish that they were not insolvent. It was for the trial court, as the finder-of-fact, to determine whether the judgment in favor of Georgetown, which was subject to reversal, was an asset having a sufficient value to rebut the statutory presumption, and the court found in favor of Ethan Allen.
A judgment on appeal may be presumed correct, but it does not follow that the judgment is, as the Levins argue, an asset worth the face amount. The significance of a pending appeal is recognized in numerous cases which hold that a judgment on appeal is recognized in numerous cases which hold that a judgment on appeal is not final until the appellate process is complete. GEICO Financial Services, Inc. v. Kramer, 575 So.2d 1345 (Fla. 4th DCA 1991), and cases cited. The judgment in favor of Georgetown, based on a theory that past customers might purchase furniture in the future, was unsupported by any precedent. A unanimous Florida Supreme Court concluded that it was "clear that Georgetown's relationship with its past *135 customers was not one upon which a claim for tortious interference with a business relationship could be based." Ethan Allen, 647 So.2d at 815.
The Levins, who had the burden of rebutting the statutory presumption of insolvency, put on no evidence as to the value of the judgment while it was on appeal. They did attempt to elicit testimony about settlement offers from Georgetown during the appeal; however, the trial court excluded that evidence, and the Levins did not proffer the substance of the settlement offers.[1]
We cannot agree with the dissent that we should ignore the lack of a proffer because the appellee failed to assert it. Section 59.041, Florida Statutes (2002), our harmless error statute, provides that no judgment shall be reversed unless "after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice." We routinely ascertain, on our own, whether excluded evidence has been proffered because, if it has not, we cannot determine if there has been a miscarriage of justice.
We therefore reject the Levins' argument, which is that as a matter of law they could not have been insolvent. Their failure to pay their debts raised the statutory presumption of insolvency, and it was a question of fact for the trial court to decide if Georgetown's financial condition, including the judgment on appeal, rebutted the presumption.
In the cross-appeal, Ethan Allen argues that there was also a fraudulent transfer involving the Pompano property. At the time the final judgment was entered in the trial court in 1992, that property was owned by Georgetown, but was encumbered by a $500,000 first mortgage to Prudential Insurance and a $125,000 second mortgage to a bank.
The questionable transfer occurred during the appeal of the tortious interference judgment, when a $516,590 third mortgage was placed on the Pompano property in favor of GGL Industries, another company owned by George Levin. The Levins then acquired the Prudential first mortgage, which was in default, and foreclosed on that mortgage. Ultimately the Levins acquired the Pompano property free and clear, for substantially less than the first mortgage. Georgetown received nothing for the equity it had in the property prior to the GGL mortgage being placed on it.
The trial court found that the Levins' placement of the GGL mortgage on the Pompano property was "evasive of creditors and, consequently, fraudulent" under Chapter 726. Implicit in this finding of fraud is that Georgetown did not receive "reasonably equivalent value." § 726.106(1). The court went on to state, however, that the subsequent purchase by the Levins of the first mortgage and the foreclosure were legitimate, and that the evidence was "not sufficient to establish the intent required by the Fraudulent Transfer Act."
The trial court was apparently only considering whether this was a fraudulent transfer under section 726.105(1)(a) which includes the element of "intent to hinder, *136 delay, or defraud any creditor of the debtor." Section 726.106(1), on which Ethan Allen was also proceeding, however, does not require intent. It provides:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
In the present case, the transfer occurred when Georgetown executed the third mortgage on the property in favor of GGL without receiving value in exchange. See § 726.102(12), Fla. Stat. (1993). That transaction amounted to a transfer of over $500,000 of Georgetown's equity in the Pompano property. In addition, Georgetown was insolvent at the time it gave the mortgage, as it had not been paying its debts as they became due. This transfer, accordingly, satisfied all of the elements of section 726.106(1), which does not require intent. United States v. Ressler, 433 F.Supp. 459 (S.D.Fla.1977), affirmed, 576 F.2d 650. Under section 726.106(1), this was a fraudulent transfer as a matter of law.
Mrs. Levin argues that relief should not have been granted against her because of the judge's comment that he was "satisfied that she had absolutely no knowledge of the legal exposure she was accepting when she signed the various papers." The court concluded, however, that she could not escape the consequences of her involvement. Mrs. Levin's argument overlooks that section 726.106(1) does not require intent. Georgetown's transfers of both properties satisfy all of the elements of section 726.106(1), and accordingly a finding of intent was unnecessary as to Mrs. Levin.
We therefore affirm the judgment entered on the Dania property. We reverse the denial of relief on the Pompano property and remand for the trial court to determine the amount by which Ethan Allen was damaged as a result of the fraudulent mortgage being placed on the Pompano property.
WARNER, J., concurs.
FARMER, J., dissents with opinion.
FARMER, J., dissenting.
I disagree with the majority and would reverse the trial court's finding of a fraudulent conveyance as to the Dania property and affirm its finding that there was no fraudulent conveyance as to the Pompano Beach property. I state my conclusions in the following paragraphs.
As to creditor-debtor status between Ethan Allen and Georgetown, actually the relationship was exactly the opposite when the transfer was effected. The party bringing the fraudulent conveyance action, Ethan Allen, was in fact the debtor at the time of the transfer, not the creditor. Although one part of the judgment held that Georgetown owed Ethan Allen $2 million for inventory delivered, another part held that Ethan Allen owed Georgetown $7 million for tortious interference. When the net is determined, Ethan Allen is a debtor and Georgetown is a creditor.[2] The Fraudulent *137 Conveyance Act does not purport to create remedies for creditors who make transfers of property for less than sufficient consideration.
Moreover, Georgetown was not insolvent when the transfer was made; if it was insolvent it became so only after the reversal of the federal court judgment. This fact is demonstrably true because the federal court litigation had, at the time of the transfers, resulted in a judgment on appeal providing for a net award of $5 million in favor of Georgetown. With that judgment added as an asset to Georgetown's balance sheet, it could not then be deemed insolvent.
Because the majority has inverted the burden of proof, or given it to the wrong party, I disagree with the majority's rationale that the judgment-asset was worthless. There is a general presumption of validity that attaches to any judgment until it has been reversed on appeal. Because of this general presumption, Georgetown was undeniably entitled to treat the judgment as an asset of face value until the reversal of the judgment. At face value, it trumped any failure to pay general obligations as they became due.
The majority argue that I do not understand the insolvency statute, section 726.103, and that my position on the burden of proof ignores the presumption in section 726.103(2). With respect, it is they who misapprehend the statute. Section 726.103(1) lays down the insolvency rule that a debtor is insolvent when the sum total of all his liabilities exceeds the fair value of all his assets. That is the only rule defining insolvency.[3] At the same time, however, section 726.103(2) states a presumption having a logical relationship to insolvency.[4] But unlike section 726.103(1) which has been framed as a rule, the Legislature has given section 726.103(2) only a subservient role in the inquiry into financial condition. Section 726.103(2) has been cast solely as a rebuttable presumption rather than as a rule, and like all rebuttable presumptions it can be surmounted by contrary evidence.
From the context it is apparent that this presumption's purpose is to facilitate application of the rule. Assets may be unknown by creditors; they may be hidden; their fair value may be subject to dispute. Because section 726.103(2) is not framed as an alternative to the insolvency rule in section 726.103(1), its only role is to ease the court into the ultimate determination on the question of solvency. Thus the Legislature drafted section 726.103(2) as a burden-proving starting point in the insolvency equation. The presumption provides that the trier of fact may initially presume insolvency upon proof that the judgment debtor is not paying debts as they become due. If the debtor is failing to pay obligations as they arise, one may presume that the debtor's debts are greater than his assetsbut only until there is evidence to the contrary. The fact that *138 the presumption is displaced by evidence showing that assets are greater than debts does not alter the insolvency rule, however. The rule continues to be that insolvency results only when there is a deficit of assets to debts.
This analysis is mandated by the Florida Evidence Code. In the words of the that Code, section 726.103(2) has created:
"a presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption...."
§ 90.302(1), Fla. Stat. (2000).[5] The Code thus makes clear that the section 726.103(2) presumption does not displace the insolvency rule, as the majority seem to suggest. Because section 726.103(2) functions as a section 90.302(1) presumption affecting the burden of producing evidence, it disappears upon the presentation of contrary evidence and the question of insolvency must be decided without regard to the presumption. Hence it does not matter that Ethan Allen adduced evidence that on the day of the transfer Georgetown was not paying its debts as they became due, because Georgetown adduced evidence that on the same day it had a $5 million asset, which made its assets greater than its debts.
In order to make out a case of a fraudulent transfer, Ethan Allen was required to prove that Georgetown was then insolvent i.e., that its debts exceeded its assets when it made the transfer. With the introduction of the judgment into the insolvency equation, it became Ethan Allen's burden to show that the $5 million judgment had a significantly lesser valueso that Georgetown would really be a debtor, not a net creditor. To carry its burden of proving insolvency, it became necessary for Ethan Allen to overcome the assumption of regularity and validity attaching to a judgment. It could do this only by facts establishing that the judgment had a real value less than its face amount. That burden required evidence, not argument alone. I am unable to find that Ethan Allen ever offered any such evidence. All that it offered to support the conclusion was mere argument.
Finally as to the Dania property, even if all these defects in Ethan Allen's case did not exist, I would still reverse for another trial because of the court's exclusion of evidence pertaining to Ethan Allen's offers to settle the appeal by paying Georgetown money, rather than the other way around. The majority holds that this issue was error but that it was not preserved Ethan Allen makes no such argument. In fact I suspect that Ethan Allen has forborne from arguing any defect in the preservation of the issue because in this non-jury trial at some point the substance of this evidence was known by everyone. In any event I would not rely on our ability to detect a failure in preservation in the absence *139 of Ethan Allen establishing such a failureespecially in light of its manifest readiness to argue everything else.[6]
As to the Pompano Beach property, if the trial judge was not convinced that the transfer was fraudulent as to future creditors, then I am not in a position to second-guess him. For all the same reasons that no such finding could be made as to the Dania property, I would sustain the trial judge's ultimate holding on this issue as well.
Finally, even if I agreed with the majority that both transactions were fraudulent, I would still reverse as to Mrs. Levin. If she were joined as a party because the fraudulent transfer had been made to her personally and the evidence showed that she still had the fraudulently transferred property in her hands, I would agree that a decree of disgorgement against her would be proper. That is not what the court has done, however. It has instead merely entered a routine money judgment against her without any showing that she holds the transferred property. The mere fact that she might have been properly joined as a party does not at all yield the conclusion that a money judgment against her is proper. I think the form of the decree against her is plain error.
NOTES
[1] We agree with the Levins that the trial court erred in excluding evidence of settlement offers on the ground that settlement offers are inadmissible under section 90.408, Florida Statutes. Although settlement offers are generally not admissible as evidence in the lawsuit in which the offers are made, an offer of settlement in one case can be relevant in another case. Ritter v. Ritter, 690 So.2d 1372 (Fla. 2d DCA 1997)(evidence of an offer in a pending personal injury case is admissible in a dissolution of marriage case for the purpose of establishing the value of a potential marital asset).
[2] The majority argue that both Georgetown and Ethan Allen qualify as creditors and therefore Ethan Allen has satisfied the sine qua non of fraudulent conveyance lawthat the debtor make a transfer to the detriment of his creditor. With respect, the conclusion does not follow from the proposition, even if it were true. In any case, we look at the status of the parties at the time the transfer was made, not later. When the Dania transfer was made in 1993, Georgetown was the creditor and Ethan Allen was the debtor. The fact that Ethan Allen later became the creditor is immaterial and irrelevant to the issue whether Georgetown's transfer when it was a creditor is within the fraudulent conveyance statute.
[3] Compare 11 U.S.C. § 101(32)(C) ("with reference to a municipality, [`insolvent' means] financial condition such that the municipality is (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due.").
[4] When a debtor's assets exceed his debts, his failure to pay debts may reasonably be attributable to causes other than insolvency. Conversely when debts are greater than assets, the failure to pay debts is almost always an indication of insolvency.
[5] See § 90.302(1), Fla. Stat. (2000) ("rebuttable presumption is ... a presumption affecting the burden of producing evidence and requiring the trier of fact to assume the existence of the presumed fact, unless credible evidence sufficient to sustain a finding of the nonexistence of the presumed fact is introduced, in which event, the existence or nonexistence of the presumed fact shall be determined from the evidence without regard to the presumption...."); § 90.303, Fla. Stat. (2000) ("unless otherwise provided by statute, a presumption established primarily to facilitate the determination of the particular action in which the presumption is applied, rather than to implement public policy, is a presumption affecting the burden of producing evidence.").
[6] The majority sweep this away by pointing to the harmless error statute. I do not agree that a party's decision not to argue the failure to preserve an evidentiary issue by a proffer even implicates the harmless error statute, and I am unable to deduce the process of ratiocination by which the majority reaches that conclusion either. It seems to me that in a non-jury trial where the trial judge is fully familiar with all pretrial hearings, it is not possible to presume that the failure to argue preservation is not without a conscious recognition that the trial judge knew what the excluded evidence was and simply thought it inadmissible.