[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-15793
Non-Argument Calendar

_____

D.C. Docket No. 0:16-cv-62364-JIC

B&D NUTRITIONAL INGREDIENTS, INC.,
a California corporation,

Plaintiff - Counter Defendant -
Appellant,

versus

UNIQUE BIO INGREDIENTS, LLC,
a Florida limited liability company
d.b.a. Unique Biotech USA,
JAIRO ESCOBAR,
an individual,
LUIS ECHEVERRIA,
an individual,

Defendants - Counter Claimants -
Appellees,

RATNA SUDHA MADEMPUDI,
an individual,
UNIQUE BIOTECH LIMITED,
an Indian corporation,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 19, 2018)

Before MARTIN, ROSENBAUM, and NEWSOM, Circuit Judges.

PER CURIAM:

In this action, B&D Nutritional Ingredients, Inc. ("B&D"), claims that Luis Echeverria and Jairo Escobar stole its confidential customer lists and then conspired with Ratna Sudha Madempudi to solicit B&D's customers through a rival company, Unique Bio Ingredients, LLC ("Unique USA"), thereby interfering with B&D's contracts to distribute probiotics manufactured by Unique Biotech Limited ("Unique India").   Echeverria brought a counterclaim against B&D for defamation.   The district court granted summary judgment to the defendants on some of B&D's claims, dismissed others, and allowed Echeverria's counterclaim to go before a jury, which returned a verdict awarding Echeverria $5,000 in damages.  B&D appeals the summary-judgment ruling and the damages award.  We affirm.

**I.**

2

Unique India is an Indian company that manufactures probiotics. Sudha, a microbiologist, is an officer of Unique India and the developer of its probiotic offerings. B&D is a California-based company that distributes probiotics and other natural products throughout the United States.

In 2009, B&D contracted with Pharmacenter Corp., then the exclusive importer of Unique India probiotics in the United States, obtaining the near-exclusive right to distribute the probiotics in the United States. The distribution agreement contained a carve-out solely for Florida, where Pharmacenter retained distribution rights. B&D and Pharmacenter also entered into a secrecy agreement to protect any confidential information exchanged between them. At the time of these agreements, Echeverria and Escobar were Pharmacenter's Business Development Manager and President, respectively.

During their business relationship, B&D shared with Pharmacenter various confidential lists of its customer information. B&D also worked to develop new customers, including several in Florida. One of those Florida clients was a company called Viva 5. Viva 5 placed several orders with B&D before opting to buy directly from Pharmacenter. In 2015, the relationship between B&D and Pharmacenter began to sour, in part due to B&D's belief that it was owed compensation from Pharmacenter for having recruited Viva 5. The two parties litigated, ultimately resolving their dispute by settlement agreement in August 2016.

3

Meanwhile, in April 2015, Echeverria and Escobar met with Sudha to discuss opening a probiotics business to compete with B&D.  Soon after, Echeverria and Escobar abruptly left Pharmacenter and formed Unique USA with Sudha.  Unique USA then entered into a non-exclusive importation and distribution agreement with Unique India.  According to B&D, Echeverria and Escobar absconded to Unique USA with B&D's confidential customer lists and used the information contained in those lists to solicit B&D's customers.

## II.

In October 2016, B&D sued Unique India, Unique USA, Echeverria, Escobar, and Sudha in federal district court based on diversity jurisdiction.  B&D claimed that the defendants had committed tortious interference with business relations and violated the Florida Uniform Trade Secrets Act ("FUTSA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), and the Florida Fictitious Names Act.  Only the tortious interference and FDUTPA claims are at issue in this appeal.[1]

In Count III, B&D alleged that Echeverria, Escobar, and Sudha violated the FDUTPA by establishing Unique USA "to deceptively procure" B&D's confidential consumer lists and then "directly solicit[] B&D customers."  In Count IV—the tortious interference claim—B&D alleged that these same defendants (plus Unique

---

[1] B&D has abandoned any challenge to the district court's resolution of its other claims by failing to brief those claims on appeal.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (issues not briefed on appeal are deemed abandoned).

India), with knowledge that "B&D and Pharmacenter had pre-existing business relationships with each other and with customers throughout the United States," created Unique USA and solicited B&D customers, "thereby interfering with contractual relationships and causing economic damage to B&D."

Echeverria answered the complaint and brought a counterclaim against B&D for defamation. Echeverria alleged that, between May and July 2015, B&D's president falsely told Sudha that Echeverria and Escobar had "cheated" B&D out of commissions and violated B&D's contract with Pharmacenter.

B&D moved to dismiss the counterclaim. The district court denied the motion, finding that although Echeverria had not sufficiently pled actual damages, he could "still maintain a counterclaim for general damages on a theory of defamation *per se*" for reputational injury. So the court allowed the counterclaim to go forward.

After discovery, the defendants moved for summary judgment on all of B&D's claims, and B&D moved for summary judgment on the counterclaim. In an omnibus order entered in November 2017, the district court granted the defendants' motion with regard to the FDUPTA and tortious-interference claims and denied B&D's motion.[2]

---

[2] The district court determined that B&D's FUTSA claims survived summary judgment, but B&D later abandoned those claims before trial on Echeverria's counterclaim, and the court dismissed them with prejudice.

5

As relevant here, the district court granted summary judgment on the FDUTPA claim. In their summary-judgment motion, the defendants argued that B&D had "not put forward evidence of its actual damages that each of the four Defendants caused B&D." B&D responded that it had produced evidence of damages with regard to Viva 5 and two other companies, NBTY and Pharmavite. The district court, however, found no evidence of recoverable "actual damages." The court stated that B&D could not recover lost profits from the evaporation of business with its customers. In any case, the court found that "the record evidence demonstrates that B&D has not in fact lost any of its customers." The evidence, according to the court, showed that Viva 5—the only customer that B&D shared with any of the defendants—had terminated its relationship with B&D months before it began purchasing from Unique USA, and that its decision to leave B&D was due to a pricing dispute, not solicitation by the defendants. Further, the court concluded that B&D had "offered no evidence to corroborate its allegations of lost sales" to NBTY and Pharmavite, which were not customers of B&D.

The district court also granted summary judgment on the tortious-interference claim. With regard to that claim, the defendants moved for summary judgment based on B&D's failure to show that they had interfered with an existing business relationship. In their motion, the defendants asserted that, while B&D had broadly alleged interference with "contractual relationships," Viva 5 was the only shared

6

customer, and its relationship with B&D ended before the alleged interference and for reasons unrelated to it.

Responding in opposition, B&D focused solely on Viva 5, contending that Viva 5 had remained its client until the "tortious acts of the Defendants, which include the creation of [Unique USA]." The district court agreed with the defendants that B&D had not shown an "existing relationship" with which the defendants interfered. According to the court, Viva 5 was the "only customer that B&D holds in common with any of the Defendants," but Viva 5 had ended its relationship with B&D well before it began purchasing from Unique USA. The court also concluded that B&D failed to show that it had sold or had a reasonable expectation of selling to NBTY, despite its inclusion on a B&D customer list.

As for Echeverria's counterclaim, the district court denied summary judgment despite finding that Echeverria had failed to offer evidence of actual damages. But the court noted that it had "previously held that Echeverria could pursue his claim on a theory of defamation *per se*." So, the court stated, "Echeverria may proceed to trial seeking a nominal damages award."

After the district court entered its omnibus order, B&D filed a motion for certification under Rule 54(b), Fed. R. Civ. P., asking the court to "enter an Order of Final Judgment as to Counts III [and] IV"—the FDUTPA and tortious interference claims—"consistent with its prior orders directed at those counts." In other words,

B&D believed at the time—though it now offers a contrary view—that Counts III and IV had been fully resolved by the court's summary-judgment order, and it wished to immediately appeal the resolution of those claims. The district court denied that motion.

The case proceeded to trial solely on Echeverria's counterclaim. After the close of evidence, the parties agreed to jury instructions, including an instruction on damages. The instructions stated that Echeverria could recover both general damages—"an amount of money that will fairly and adequately compensate him for such injury as a preponderance of the evidence shows was caused by the defamatory statement in question—and nominal damages—"damages of an inconsequential amount which are awarded to vindicate a right where a wrong is established but no damage is proved."

The jury returned a verdict in favor of Echeverria in the amount of $5,000. The district court entered final judgment and closed the case. B&D now appeals the grant of summary judgment on its FDUTPA and tortious-interference claims and the award of damages on Echeverria's counterclaim.

## III.

We start with the district court's grant of summary judgment. We review *de novo* a grant of summary judgment, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Haynes v. McCalla Raymer, LLC*, 793

8

F.3d 1246, 1249 (11th Cir. 2015).  Summary judgment should be granted where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  *Id.*

In B&D's view, the district court's summary-judgment order should be vacated for at least four reasons:  (1) the court improperly entered summary judgment on the tortious-interference claim without considering interference with the business relationship between B&D and Pharmacenter; (2) the court erred in finding no existing business relationship with NBTY or Viva 5; (3) the court misapprehended the full nature and extent of B&D's damages for its tortious-interference claim; and (4) the court applied the wrong standard for damages in a FDUTPA claim.  None of these arguments is persuasive.

### A.

B&D first argues that the district court improperly entered summary judgment on the tortious-interference claim without considering interference with the exclusive distribution agreement between B&D and Pharmacenter.  B&D acknowledges that this theory of interference was not raised at summary judgment. But the fault, in B&D's view, lies with the defendants and the court.  B&D asserts that this theory was alleged in the complaint, but the defendants "never moved [for] summary judgment on this issue and it was never briefed."  B&D therefore asserts that the defendants only moved for "partial" summary judgment, and it claims it had

9

no responsibility to "defend[] issues that were never attacked."  Asking for "due process" and a "[a] first opportunity to argue unadjudicated issues," B&D says we should remand for consideration of this newly raised theory.

We decline to do so.  It is well established "that arguments not raised at the district court level will generally not be considered on appeal."  *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598 (11th Cir. 1995) (*en banc*).  This rule applies not only to claims that were never raised in a complaint, but also to "grounds alleged in the complaint but not relied upon in summary judgment."  *Id.* at 599.  That's because "[i]n opposing a motion for summary judgment, a party may not rely on his pleading to avoid judgment against him."  *Id.* (quotation marks omitted).  The parties bear the burden of formulating arguments at summary judgment.  *Id.*  It is not the district court's responsibility to "distill every potential argument that could be made based upon the materials before it on summary judgment."  *Id.*  Accordingly, "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."  *Id.*

Here, B&D cannot now revive its theory that the tortious-interference claim could have survived based on its contractual relationship with Pharmacenter.  While that ground was alleged in the complaint in vague terms, B&D failed to raise it when responding in opposition to summary judgment.  *Id.*  Because "grounds alleged in

10

the complaint but not relied upon in summary judgment are deemed abandoned," *id.*, there is no basis to vacate and remand for consideration of this abandoned ground.

We reject B&D's attempt to pin the blame on the defendants or the district court for its own failure to raise a pertinent argument at summary judgment. The record belies B&D's claim that it had no opportunity to raise that argument because the defendants' summary-judgment motion was actually a "partial" motion. In moving for summary-judgment on B&D's claim of tortious interference, the defendants argued that B&D had not shown interference with an "existing business relationship." The defendants asserted that, despite the complaint's broad allegation of interference with unspecified "contractual relationships," the evidence supported just one potential business relationship, which was B&D's relationship with Viva 5. And in their view, the Viva 5 relationship could not sustain the claim.

In opposing summary judgment, B&D was required to go beyond the pleadings and present its arguments for why summary judgment was not appropriate. *See Dunmar*, 43 F.3d at 599. One such argument could have been the one that it presents here: that the defendants construed the tortious-interference claim too narrowly and that there was evidence of interference with B&D's relationship with Pharmacenter. But instead, B&D's response focused solely on Viva 5. Nowhere in its response did B&D suggest that its claim for tortious interference was premised on some other business relationship, whether with Pharmacenter or another entity.

Had B&D fairly presented to the district court such an argument, both the defendants and the court could have addressed it.

So, while the defendants' summary-judgment motion may not have appreciated the full scope of B&D's vaguely worded claim, it was B&D's responsibility to formulate that argument and present it to the district court. The court was not required to "distill" an unmade theory of interference on its own. *See id.* Plus, the record indicates that even B&D believed that no part of its tortious-interference claim remained after the grant of summary judgment. In fact, B&D asked the court to enter final judgment on the tortious-interference claim under Rule 54(b), indicating that it had been fully resolved.

For these reasons, we conclude that B&D abandoned at summary judgment its argument that the defendants interfered with its contractual relationship with Pharmacenter. Nor are any "special circumstances" present in this case, so we decline to exercise our jurisdiction to consider the issue for the first time on appeal or to remand this case to address that portion of the claim. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1332 (11th Cir. 2004) (explaining that we may choose to consider a newly-raised argument in certain "special circumstances").

**B.**

12

To the extent B&D argues more broadly that the district court erred in finding that there was no other "existing business relationship" with which the defendants could have interfered, we disagree.

"As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered." *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 815 (Fla. 1994). While "a protected business relationship need not be evidenced by an enforceable contract," it "must afford the plaintiff existing or prospective legal or contractual rights." *Id.* at 814 (quotation marks omitted). Thus, a mere offer to sell is not enough, nor is "speculation regarding future sales to past customers." *Id.* at 814–15.

Here, the district court properly concluded that B&D had not shown interference with an existing business relationship. B&D does not challenge the court's determination that the Viva 5 relationship could not support the claim because it had ended before the alleged interference and for reasons unrelated to the defendants' actions. So B&D has abandoned reliance on the Viva 5 relationship. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (issues not raised on appeal are abandoned). As for NBTY, there is no evidence of an "actual and identifiable understanding or agreement which in all probability would

13

have been completed if the defendant[s] had not interfered." *Ethan Allen*, 647 So. 2d at 815. B&D's speculation about lost sales is not enough. Accordingly, the court did not err in granting summary judgment on the tortious-interference claim.

## C.

B&D next argues that the district court misapprehended the full nature and extent of its damages for the tortious-interference claim. But the court did not address the element of damages for this claim. Plus, B&D's argument appears to be based on its relationship with Pharmacenter. As we have explained above, B&D abandoned that argument by failing to fairly present it to the district court.

## D.

B&D's final argument against the grant of summary judgment is that the district court misapplied the wrong standard for damages in a FDUTPA claim.

The FDUTPA "is intended to protect a consumer from unfair or deceptive acts or practices which diminish the value or worth of the goods or services purchased by the consumer." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla. Dist. Ct. App. 1985). The FDUTPA allows a plaintiff to recover "actual damages," Fla. Stat. § 501.211(2), but it "does not authorize recovery of consequential damages." *Urling*, 468 So. 2d at 454 ("[T]he statute entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but

14

does not authorize recovery of consequential damages to other property attributable to the consumer's use of such goods or services.").

The district court concluded that lost profits were consequential damages not recoverable under the FDUTPA. B&D concedes that *future* lost profits are unavailable under the FDUPTA, but it argues that the court erred by treating *all* lost profits as unavailable.

However, even assuming that the district court erred on that point, the court also found that B&D had offered no evidence of lost sales or lost customers. In other words, even if past lost profits were available under the statute, B&D had no evidence of past lost profits. B&D's only response to that finding is this: "[t]he former point is addressed above." Presumably B&D is referring to its discussion of damages with regard to its tortious-interference claim and its relationship with Pharmacenter. But just like the Pharmacenter relationship was not fairly presented to the district court with regard to the tortious-interference claim, neither was it fairly presented with regard to the FDUTPA claim. And for essentially the same reasons as we have elaborated above, we conclude that B&D abandoned reliance on that theory of damages by failing to raise it below. *See Resolution Trust*, 43 F.3d at 599.

**IV.**

15

Finally, B&D argues that the district court erred by instructing the jury that it could award more than nominal damages, in contravention of its earlier ruling. Any error, however, was invited by B&D.

"A party that invites an error cannot complain when its invitation is accepted." *Pensacola Motor Sales Inc. v. E. Shore Toyota, LLC*, 684 F.3d 1211, 1231 (11th Cir. 2012). As relevant here, a party cannot complain on appeal when a jury follows an instruction to which it agreed. *See Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1283 (11th Cir. 2015) ("Having agreed to the proposed instruction in response to the jury's question, indicating that the jury could award zero dollars in statutory damages to one defendant, YPPI has waived its right to challenge that award on appeal.").

Here, any error in instructing the jury that it could award more than nominal damages was invited by B&D. B&D's counsel expressly agreed to the damages instruction given by the district court. B&D cannot now complain that the jury followed an instruction it agreed to. Plus, B&D does not clearly argue that the trial evidence does not support the award of damages. So any argument in that regard is abandoned. *See Sapuppo*, 739 F.3d at 680–81.

## V.

For these reasons, we affirm the judgment against B&D.

**AFFIRMED**.