# Third District Court of Appeal

## State of Florida

Opinion filed May 17, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-628
Lower Tribunal No. 21-15399
_____

**Birol Ozyesilpinar,**
Appellant,

vs.

**Reach PLC, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Mark Blumstein, Judge.

Birol Ozyesilpinar, in proper person.

Toth Funes PA, and Brian W. Toth and Freddy Funes, for appellees DMG Media Ltd., Daily Mail and General Trust PLC, Associated Newspapers Ltd., Reach PLC, and MGN Limited; Akerman LLP, and Ryan Roman and Eric D. Coleman (Fort Lauderdale), for appellee Black Entertainment Television, LLC; and Squire Patton Boggs (US) LLP, and Amanda E. Preston and Andrew R. Kruppa, for appellee Essence Communications, Inc.

Before FERNANDEZ, C.J., and HENDON and BOKOR, JJ.

HENDON, J.

Birol Ozyesilpinar ("Appellant") appeals from orders granting Appellees' motions to dismiss, and from a final judgment dismissing the complaint with prejudice. We affirm.

The Appellant marketed her unit at 448 Ocean Drive, Miami Beach, Florida, with online short-term rental companies (e.g., Booking.com, AirBnB). A potential renter, Ms. Brown, a Black woman, sought to rent the unit from the Appellant through Booking.com. As set forth in the complaint, the Appellant accused Ms. Brown of engaging in credit card fraud, and confronted her on the WhatsApp social media site. The conversation devolved into name-calling, and the Appellant used various racist slurs against Ms. Brown, and over time sent emails and voicemails to Ms. Brown containing racist slurs, photos, and accusations.[1]

Ms. Brown subsequently posted on her Facebook page these interactions with the Appellant, including screenshots of the WhatsApp conversations between herself and the Appellant. Following Ms. Brown's Facebook postings about the Appellant's behavior, the Miami New Times

---

[1] The articles published by the Appellees included screenshots of the Appellant's racist text messages, photos, and sound clips, in which the Appellant repeatedly called Ms. Brown the n-word.

2

interviewed the Appellant, in which she admitted to making the slurs. The Appellant's unchallenged statements to the Miami New Times included admitting to calling Ms. Brown a "monkey," claiming "being racist is not illegal," and stating that "we have freedom of speech. If I want to call somebody a monkey, I should be able to say that."

The story was picked up by other media companies. In June 2019, Black Entertainment Television, LLC ("BET") published an article detailing the Appellant's statements and behavior towards Ms. Brown, and indicated that Booking.com had rescinded its ad for the Appellant's property based on its stated intolerance of discrimination. BET's article characterized the Appellant's online confrontation with Ms. Brown as a "racist tirade." Other media outlets[2] (collectively, "Appellees"), took up the story and published similar articles about the dispute.

The Appellant filed the complaint at issue here.[3] Relevant to this appeal, the Appellant asserted three claims against BET: (a) defamation

---

[2] DMG Media, LTC, Daily Mail and General Trust PLC, Associated Newspapers LTD, Reach PLC, MGN Limited, Essence Communications, Inc., and Black Entertainment Television LLC.

[3] The Appellant filed two complaints, one on June 25, 2021, and one on June 28, 2021, against eleven media companies that include the Appellees in this appeal. The June 25, 2021 complaint against Appellees Associated Newspapers and Voice Media Group (Miami New Times), and other media outlets went before Judge Pedro Echarte on motions to dismiss. Judge

3

(Count VI); (b) defamation by implication (Count VII); and (c) tortious interference with business relationships (in response to Booking.com's removal of her account) (Count XV). Appellant also sought a permanent injunction against BET, and the other defendants (Count XIV).

Relevant to Appellee Associated Newspapers, the complaint alleged defamation (Count III), defamation by implication (Count IV), permanent injunction (Count XIV), and tortious interference (Count XV). The complaint based these claims on two articles, one in DailyMail.com and another in Metro, that outlined the Appellant's specific statements to Ms. Brown and characterized them as a "rant" or "racist tirade." The complaint raised the same claims for permanent injunction (Count XIV) and tortious interference (Count XV) against MGN. The Appellant also alleged defamation (Count XII) and defamation by implication (Count XIII) against MGN for implying that the Appellant is a racist. The DailyMail.com article also included screenshots of the Appellant's text messages, photos, and sound clips of the voicemails she sent to Ms. Brown.

Relevant to Appellee Essence Communications, the Appellant brought one count of defamation by implication (Count V), contending that

Echarte dismissed that complaint with prejudice, giving rise to the related appeal before this Court, No. 3D22-423. None of the parties moved to consolidate the two separately filed complaints below. The two complaints name different defendants but are otherwise identical.

4

the article should have included her belief that Ms. Brown attempted to defraud her and that both women had exchanged insults.

In November 2021, Appellee BET moved to dismiss the complaint for failure to state a cause of action for all counts. Pursuant to section 768.295(1), Florida Statutes,[4] BET additionally asserted its right "to exercise the rights of free speech in connection with public issues" and to expeditiously dispose of lawsuits that are "inconsistent with the right of persons to exercise . . . constitutional rights of free speech in connection with public issues." On December 8, 2021, the Appellees DMG Media Ltd., Daily Mail and General Trust PLC, and Associated Newspapers Ltd., Reach PLC, and MGN Limited jointly moved to dismiss the complaint, asserting that the statements of which the Appellant complained were

---

[4] Florida's Anti-SLAPP statute, section 768.295, Strategic Lawsuits Against Public Participation (SLAPP) prohibited, provides, in part:

> (1) It is the intent of the Legislature to protect the right in Florida to exercise the rights of free speech in connection with public issues, and the rights to peacefully assemble, instruct representatives, and petition for redress of grievances before the various governmental entities of this state as protected by the First Amendment to the United States Constitution and s. 5, Art. I of the State Constitution. It is the public policy of this state that a person or governmental entity not engage in SLAPP suits because such actions are inconsistent with the right of persons to exercise such constitutional rights of free speech in connection with public issues. . . .

5

protected opinion under the First Amendment and Florida law and were also not about her, not false, or not defamatory. On January 31, 2022, Appellee Essence Communications moved to dismiss the complaint for failure to state a cause of action, as well as for insufficient service of process and lack of personal jurisdiction.

The Appellant contended in her pro se responses to Appellees' motions to dismiss that "hurling a racial insult is not a guarantee that one actually harbors ideological racism," and that "while inexcusable, this is no clear proof" that Appellant is a racist. Further, the Appellant argued that the published articles were never explicitly identified by the publishers as opinion pieces.

The trial court held hearings on the Appellees' motions to dismiss. After all parties had presented their arguments, the trial court found that much of the Appellant's testimony at the hearings went outside of the four corners of the complaint and failed to address the asserted legal issues. The trial court found the factual allegations were uncontroverted, and granted the Appellees' motions to dismiss with prejudice. On BET's motion to dismiss, the trial court found that (i) the Appellant's claims against BET were barred by the Anti-SLAPP statute; (ii) on the face of the complaint, the alleged defamatory statement is true; (iii) any suggestion of racism in the

6

article is pure opinion and not actionable; (iv) the Appellant fails to state a claim for defamation by implication for the same reason that the defamation claim fails; (v) the Appellant's claim for defamation by implication also fails because the Appellant failed to actually allege any false suggestion, impression or implication arising from otherwise truthful statements; (vi) the Appellant's tortious interference claim is barred by the single publication rule; (vii) the Appellant's tortious interference claim also fails because news reporting does not constitute "improper" conduct as a matter of law; and (viii) the claim for injunctive relief fails because enjoining this speech would violate the First Amendment to the United States Constitution. The trial court dismissed with prejudice Counts III, IV, XII, XIII XIV, and XV against Appellees DMG Media, Daily Mail and General Trust PLC, Associated Newspapers LTD, Reach PLC, and MGN Limited. The order granting the Appellees' joint motion to dismiss detailed the contents of the published articles and concluded that the allegedly libelous statements are protected speech, constitute pure non-actionable statements of opinion based on Appellant's own messages to Ms. Brown, the media, and others. Further, the order states that many of the statements are not defamatory, fail to meet the requirements for tortious interference, and Appellant is not entitled to a permanent injunction. The trial court similarly granted Appellee

7

Essence Communications' motion to dismiss Count V for failure to state a cause of action for defamation by implication. The trial court found that Essence Communications' publication represented non-actionable statements of pure opinion, and that defamation law affords editorial discretion to media publishers. Additionally, notwithstanding the alleged omissions and juxtapositions, the gist and substance of the published article was true.

On February 21, 2022, the trial court entered final judgments of dismissal as to all Appellees and denied the Appellant's motion for rehearing. This appeal followed.

Our standard of review of an order granting a motion to dismiss for failure to state a cause of action is de novo. Morin v. Fla. Power & Light Co., 963 So. 2d 258, 260 (Fla. 3d DCA 2007).

Analysis

Defamation.  To prevail on a cause of action for defamation, a plaintiff must plead and ultimately prove five elements: "(1) publication; (2) falsity; (3) actor must act . . . at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008). See also Philadelphia Newspapers, Inc. v. Hepps, 475 U.S. 767, 768-69 (1986) ("[A]t

8

least where a newspaper publishes speech of public concern, a private-figure plaintiff cannot recover damages without also showing that the statements at issue are false"). Florida law requires "that the publication shall be substantially true, and that mere inaccuracies, not affecting materially the purport of the article, are immaterial." McCormick v. Miami Herald Publ'g Co., 139 So. 2d 197, 200 (Fla. 2d DCA 1962) (quoting 53 C.J.S. Libel and Slander §122).

A statement is pure opinion when it is "commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener." Skupin v. Hemisphere Media Grp., Inc., 314 So. 3d 353, 356 (Fla. 3d DCA 2020). By contrast, a statement is mixed opinion "when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication." Stembridge v. Mintz, 652 So. 2d 444, 446 (Fla. 3d DCA 1995) (quoting From v. Tallahassee Democrat, Inc., 400 So. 2d 52, 57 (Fla. 1st DCA 1981)).

The Appellant argues in the initial brief that the published statements are actually mixed opinion, which in some instances is not protected speech. For a statement to be mixed opinion, the communicator's

9

statement must imply that "a concealed or undisclosed set of defamatory facts would confirm" the statement. See Hay v. Indep. Newspapers, Inc., 450 So. 2d 293, 295 (Fla. 2d DCA 1984). The Appellant did not raise this issue below in the trial court, and has waived it for purposes of this appeal. Dade Cnty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638 (Fla.1999) (stating that a claim not raised in the trial court will not be considered on appeal); Dober v. Worrell, 401 So. 2d 1322 (Fla.1981) (holding that issues not presented to the trial judge will not be considered in an appeal from final judgment on the merits). "In order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." Tillman v. State, 471 So. 2d 32, 35 (Fla.1985). In any event, the published articles do not meet the definition of mixed opinion, as they contains no implications of racism based on concealed or undisclosed defamatory facts.

On a motion to dismiss, the trial court must consider only what is presented within the four corners of the complaint. Here, the trial court relied upon the Appellant's own allegations as set forth in the complaint.[5]

---

[5] In her complaint, the Appellant asserted that (1) she "communicated to [Ms.] Brown that she was representing all Black people poorly by her suspicious behavior"; (2) she stated that "being racist is not illegal"; (3) she

10

Based on Appellant's own admissions, the trial court properly found that the statements in the articles – that the Appellant directed multiple racist comments towards Ms. Brown – were true, and the articles' characterization of the Appellant's comments as a "racist tirade" is a matter of pure opinion. Thus, "commentary or opinion based on facts that are set forth in the subject publication or which are otherwise known or available to the reader or listener do not constitute libel." Scott v. Busch, 907 So. 2d 662, 667-68 (Fla. 2d DCA 2005); Miami Herald Publ'g Co. v. Tornillo, 418 U.S. 241, 258 (1974) ("The choice of material to go into a newspaper, and the decisions made as to limitations on the size and content of the paper, and treatment of public issues . . . – whether fair or unfair – constitute the exercise of editorial control and judgment.").

Because the content of the published articles is based on documented facts in the form of Appellant's own admissions, the trial court correctly characterized the articles' content as pure opinion and is thus protected speech.

Defamation by implication. Defamation by implication is "premised not on direct statements but on false suggestions, impressions and

---

"insult[ed] Brown which included some racial insults"; (4) she said "[i]f I want to call somebody a monkey, I should be able to say that"; and (5) she "made . . . racist comments."

implications arising from otherwise truthful statements." <u>Jews for Jesus</u>, 997 So. 2d at 1107. The protections afforded to defendants in defamation actions apply to the tort of defamation by implication. <u>Id.</u> at 1108. As was true for the defamation counts, the phrase "racist tirade" as used in the Appellees' articles is based on Appellant's admissions and is a statement of opinion based on facts reported in the articles. Thus, the Appellant's contention that the phrase is defamatory by implication fails.

<u>Tortious interference with a business relationship</u>. The trial court correctly determined that this cause of action was without merit. The elements of tortious interference with a business relationship are "(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." <u>Tamiami Trail Tours, Inc. v. Cotton</u>, 463 So. 2d 1126, 1127 (Fla.1985). A protected business relationship need not be evidenced by an enforceable contract. <u>Id.</u> However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." <u>Ethan Allen, Inc. v. Georgetown Manor, Inc.</u>, 647 So. 2d 812, 814 (Fla. 1994) (citing <u>Register v. Pierce</u>, 530 So. 2d 990, 993 (Fla. 1st DCA 1988)).

In this case, the Appellant cannot point to any existing business relationship with which the Appellees somehow interfered by publishing the articles at issue. "A plaintiff may properly bring a cause of action alleging tortious interference with present or prospective customers but no cause of action exists for tortious interference with a business's relationship to the community at large." Ethan Allen, 647 So. 2d at 815 (citations omitted). As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered. Id. The Appellant fails to "show with reasonable certainty the elements of tortious interference, as there was no evidence of unjustified interactions with specific parties known to be involved, or likely to be involved, in an advantageous business or contractual relationship. . . ." Chevaldina v. R.K./FL Mgmt., Inc., 133 So. 3d 1086, 1090 (Fla. 3d DCA 2014). The Appellant's contention that the publications harmed her rental business has no traction, as the tort of interference is not met by communications to the public at large. Ethan Allen, 647 So. 2d at 815.

Further, the single publication/single action rule does not permit multiple actions to be maintained when they arise from the same

13

publication upon which a failed defamation claim is based. Ovadia v. Bloom, 756 So. 2d 137, 141 (Fla. 3d DCA 2000); Orlando Sports Stadium, Inc. v. Sentinel Star Co., 316 So. 2d 607, 609 (Fla. 4th DCA 1975) ("Florida courts have held that a single wrongful act gives rise to a single cause of action, and that the various injuries resulting from it are merely items of damage arising from the same wrong") (citing Easton v. Weir, 167 So. 2d 245, 247 (Fla. 2d DCA 1964)). "Thus, if a defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply." Callaway Land & Cattle Co. v. Banyon Lakes C. Corp., 831 So. 2d 204, 208 (Fla. 4th DCA 2002) (citing Fridovich v. Fridovich, 598 So. 2d 65, 70 (Fla. 1992)).

Finally, news reporting is not the kind of "improper" conduct on which the Appellant can base a tortious interference claim. Seminole Tribe v. Times Publ'g Co., 780 So. 2d 310, 318 (Fla. 4th DCA 2001) ("We question whether this common law cause of action could ever be stretched to cover a case involving news gathering and publication.").

Permanent injunction. The Appellant has no cause of action for permanent injunction against any of the Appellees, as this would be an example of prior restraint on speech triggering First Amendment concerns. See, e.g., Vrasic v. Leibel, 106 So. 3d 485, 486 (Fla. 4th DCA 2013);

14

Chevaldina, 133 So. 3d at 1090 ("Injunctive relief is not available to prohibit the making of defamatory or libelous statements.").

We conclude, on de novo review of the record, that the trial court correctly dismissed the complaint with prejudice as to all Appellees for failure to state a cause of action for the alleged defamation, defamation by implication, tortious interference, and for injunction.

Affirmed.